The STATE of Ohio, Appellant,

v.

FEATHERSTONE, Appellee.

[Cite as *State v. Featherstone,* 150 Ohio App.3d 24, 2002-Ohio-6028.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–187.

Decided Nov. 5, 2002.

Ron O'Brien, Franklin County Prosecuting Attorney, and Steven L. Taylor, Assistant Prosecuting Attorney, for appellant.

Yeura R. Venters, Franklin County Public Defender, and Allen V. Adair, Assistant Public Defender, for appellee.

---

PEGGY BRYANT, Judge.

{¶ 1} Plaintiff-appellant, state of Ohio, appeals from a judgment of the Franklin County Court of Common Pleas granting the motion to suppress of defendant-appellee, Arthur W. Featherstone. Plaintiff assigns a single error:

{¶ 2} "The trial court erred when it granted the motion to suppress."

{¶ 3} Because the law enforcement officers lacked probable cause to arrest defendant for littering, we affirm.

{¶ 4} Pursuant to an indictment filed October 24, 2001, defendant was charged with one count of possession of cocaine in violation of R.C. 2925.11, a felony of the fifth degree. On January 15, 2002, defendant filed a motion to suppress and, on January 30, 2002, the trial court held a hearing on defendant's motion.

{¶ 5} According to the evidence presented at the hearing, on June 20, 2001, Officer Keith Kise was on directed patrol in the area of Mt. Vernon Avenue and North 20th Street. As part of the directed patrol, Kise and another officer were in plainclothes, while two other officers were in cruisers. The four were told to "go out and make as many arrests as possible on violations such as narcotics, trafficking, stuff like that." The purpose of the directed patrol was to "show the community [law enforcement's] presence, basically." Id.

{¶ 6} They began their shift on June 20 at three o'clock in the afternoon; the first arrest was defendant. According to Kise, defendant drew Kise's attention when defendant pulled a clear, plastic baggie out of his right front pocket, turned his back to the van, counted the small white objects inside the baggie, and returned the baggie to his pants pocket.

{¶ 7} Kise then noticed a woman's garter defendant was trying to put on his head. Kise did not know where defendant obtained the garter; he did not see defendant bend down and pick it up from the ground, see defendant take it out of his pocket, or see someone hand it to defendant. Defendant did not drop the garter, but rather it flipped off his head and onto the ground. Kise immediately called for a marked cruiser to make an arrest for littering. The officers arrived within 30 seconds, arrested defendant, and placed him in handcuffs. They recovered a woman's garter approximately five to seven feet from defendant. After arresting defendant, they conducted a search of him and from his front pants pocket retrieved a baggie "that contained some rocks and some bindles, which, at the time, we believed [were] either heroin or cocaine."

{¶ 8} At the conclusion of the hearing, the trial court announced its decision. In the course of its decision, the court addressed both pretextual arrests and potential violations of equal protection. Specifically, the court expressed its belief that, had defendant dropped the garter in a different neighborhood, the scenario would have been different. Rather than immediately arrest someone, the officers would have made some effort after the passage of time to see whether the person either knew he or she had dropped something, or was intentionally discarding it and walking away from it. In any event, the court surmised that the person would be given a ticket for littering and ordered to appear in environmental court.

{¶ 9} Acknowledging the current law on pretextual arrests, the court added that "although it may be justified under a pretextual arrest, as being okay in the situation, just smacks of violation of equal protection." Indeed, the court doubted that, had the officers found no drugs after searching defendant, they would have put defendant in a cruiser and jailed him for littering. The trial court concluded by stating that "I think those are all issues, and I certainly think the equal protection argument is very impressive. For that reason I'm going to sustain the motion to suppress."

{¶ 10} Plaintiff appeals, contending that the trial court erred in granting defendant's motion to suppress. "[A]ppellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact." *State v. Vest* (May 29, 2001), Ross App. No. 00CA2576, 2001 WL 605217. A "reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas v. United States* (1996), 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911. However, "as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal." Id. Accordingly, a reviewing court must "independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case." (Citations omitted.) *Vest*, supra.

{¶ 11} "[T]he Fourth Amendment bars only unreasonable searches and seizures." *Maryland v. Buie* (1990), 494 U.S. 325, 331, 110 S.Ct. 1093, 1096, 108 L.Ed.2d 276, citing *Skinner v. Ry. Labor Executives' Assn.* (1989), 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639. Warrantless searches are per se unreasonable outside of the carefully defined exceptions. *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576; *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 481, 91 S.Ct. 2022, 29 L.Ed.2d 564; *Mincey v. Arizona* (1978), 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290. Among those exceptions is search pursuant to a lawful arrest. *Agnello v. United States* (1925), 269 U.S. 20, 46 S.Ct.

4, 70 L.Ed. 145; *United States v. Robinson* (1973), 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427; *Gustafson v. Florida* (1973), 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456.

{¶ 12} In the trial court, defendant argued three separate bases for finding his arrest to be unlawful and for granting his motion to suppress: (1) lack of probable cause to arrest, (2) violation of equal protection, and (3) pretextual stop. Understanding that the trial court was speaking from the bench in announcing its opinion, we nonetheless do not interpret its decision as encompassing all three grounds. Rather, the trial court appears to have focused on the pretextual nature of defendant's arrest, and the inequity of arresting defendant when, as the court presumed, most other defendants would have been given a citation and ordered into court. Accordingly, we address those grounds first.

{¶ 13} Whether defendant's equal protection argument theoretically may have merit, defendant presented no evidence, through the officers or otherwise, to support his contention that he was denied equal protection, such as evidence of how his treatment differed from that typically afforded those charged with littering. Accordingly, the trial court erred in premising its decision on an equal protection violation in the absence of evidence to support it.

{¶ 14} Moreover, although the trial court may have been accurate in characterizing defendant's arrest as a pretextual arrest, the trial court acknowledged that the applicable law does not support suppression of evidence from every pretextual arrest. To the contrary, as long as the officers had probable cause to make the arrest, their ulterior motive in doing so does not affect the validity of the arrest. *Arkansas v. Sullivan* (2001), 532 U.S. 769, 771, 121 S.Ct. 1876, 149 L.Ed.2d 994 (concluding that an arrest made as a pretext for a narcotics search is not invalid if supported by probable cause). See, also, *Whren v. United States* (1996), 517 U.S. 806, 812, 116 S.Ct. 1769, 135 L.Ed.2d 89 (concluding that an ulterior motive does not vitiate legal justification); *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091.

{¶ 15} Because the record lacks evidence of a violation of defendant's equal protection rights, and because of the legal support for the state's contention that the pretextual nature of defendant's arrest does not render it invalid if it is supported by probable cause to arrest defendant for a criminal infraction, the validity of the trial court's decision on defendant's motion to dismiss rests on whether the arresting officer had probable cause to believe defendant committed some offense for which he could be arrested.

{¶ 16} "Probable cause exists where 'the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of

reasonable caution in the belief that' an offense has been or is being committed." *Draper v. United States* (1959), 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327, quoting *Carroll v. United States* (1925), 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543. Here, defendant was arrested for the offense of littering.

{¶ 17} Typical of littering ordinances is Columbus City Code 902.01(a), stating, "No person, regardless of intent, shall deposit litter, cause litter to be deposited, or allow litter to accumulate in an unsightly, unsanitary, or unsafe manner * * *." Columbus City Code 902.01(e)(1) defines "litter" as "garbage, trash, waste, rubbish, ashes, cans, bottles, wire, paper, cartons, boxes, automobile parts, furniture, glass, debris, leaves, dead and decaying material, or any refuse of any description or any other thing, matter, or substance which may accumulate in an unsightly, unsanitary, or unsafe manner." The trial court expressed some legitimate doubt whether the garter, which the trial court deemed an item of women's clothing, falls into the category of litter. Even if the garter is properly considered the type of item encompassed in the littering ordinances, the record does not support a finding of probable cause that defendant was littering.

{¶ 18} The thrust of a littering ordinance is "to prevent [litter] being disregarded or abandoned by the depositor as unsightly and unsanitary litter exposed to public view and exposing the public to potential injury." *State v. Haudenshild* (June 7, 1994), Seneca App. No. 13–93–26, 1994 WL 247053. Here, defendant was attempting to place a woman's garter on his head when he flipped it off and it fell to the ground. Within 30 seconds the police officers were at the site to arrest him. The lapse of 30 seconds is insufficient to give the officers probable cause to believe that defendant had abandoned or even disregarded the garter on the ground next to him.

{¶ 19} In an attempt to militate against the haste with which the officers responded to defendant's dropping the garter, plaintiff suggests that the evidence supports a determination that the officers took up to two minutes to arrive to arrest defendant. Officer Kise, however, testified that the arresting officers arrived within 30 seconds. When the arresting officer was questioned at the hearing concerning the time lapse, he stated that he was "not real sure. Maybe a minute or two." On cross-examination, when he was asked if the time lapse could have been as short as thirty seconds, he replied, "I'm really—I really can't recall, ma'am." However, even if we consider the time lapse to be two minutes from when the garter flipped off defendant's head to when the officers arrived, that brief period of time, in combination with the nature of the item dropped, leaves us unable to conclude that the officers had a reasonable suspicion that defendant had just disregarded or abandoned "litter."

{¶ 20} Although the trial court did not address the probable-cause issue, the determination of probable cause is to be reviewed de novo by an

appellate court without giving deference to the trial court's conclusions, traditionally given when pure questions of fact are involved. *Ornelas,* supra. The evidentiary record before the trial court is undisputed and appropriately addressed on appeal. *State v. Peagler* (1996), 76 Ohio St.3d 496, 668 N.E.2d 489, syllabus ("While an appellate court may decide an issue on grounds different from those determined by the trial court, the evidentiary basis upon which the court of appeals decides a legal issue must have been adduced before the trial court and have been made a part of the record thereof"). Given the undisputed nature of the evidence, we address the probable-cause issue and determine that the officers lacked probable cause to arrest defendant for littering. Accordingly, we overrule plaintiff's single assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

TYACK, P.J., and BROWN, J., concur.