DECISION AND JUDGMENT ENTRY
{¶ 1} The State of Ohio appeals the trial court's decision granting appellee Billy J. Dunfee's motion to suppress. The state contends that the trial court erroneously determined that appellee, a passenger in a vehicle, had standing to challenge the constitutionality of a traffic stop. The state also argues that the trial court erroneously concluded that neither reasonable suspicion nor probable cause supported the law enforcement officer's decision to stop the vehicle for making a u-turn at a crossing that contained a sign prohibiting u-turns, when the sign did not conform to the Ohio Manual of Uniform Traffic Control Devices (OMUTCD).
 {¶ 2} To support the trial court's judgment, appellee asserts that the officer lacked reasonable suspicion to order him from the vehicle or probable cause to arrest him.
 {¶ 3} Because appellee was a passenger in a vehicle that was stopped, his freedom of movement was restrained and he was effectively seized. See State v. Carter (1994), 69 Ohio St.3d 57, 630 N.E.2d 355. Thus, he has standing to challenge the legality of the stop and we disagree with appellant's argument to the contrary. However, because the reasonableness of a traffic stop under the Fourth Amendment does not depend on scientific certainty but instead upon objective reasonableness, a law enforcement officer may stop a vehicle for disregarding a traffic sign when the officer reasonably believes that the traffic sign is valid and prohibits the action.
 {¶ 4} Additionally, because appellee was a passenger in a vehicle that the officer lawfully stopped, the law permits an officer to order appellee to exit the vehicle without regard to "cause." Once appellee exited the vehicle and behaved uncooperatively and combatively, leading the officer to believe that appellee had a weapon, the officer acted reasonably in continuing to detain appellee and eventually arresting him. Therefore, appellee's argument that the officer lacked reasonable suspicion to order him from the vehicle or probable cause to arrest him is without merit.
 {¶ 5} Consequently, we agree with the state that the trial court erred by granting appellee's motion to suppress evidence, and we reverse the trial court's judgment.
 {¶ 6} In January of 2002, Phyllis Brooks, the driver of the vehicle, and appellee, the passenger, were traveling on U.S. Route 33. Ohio State Highway Patrol Sergeant Jason Greenwood observed Brooks's vehicle make a u-turn at a crossover that had a sign prohibiting u-turns. Sergeant Greenwood then stopped Brooks's vehicle.
 {¶ 7} As Sergeant Greenwood approached the vehicle, he saw appellee reach over to put on his seatbelt. The sergeant also observed appellee making furtive movements "as if he was attempting to hide something." The sergeant explained that appellee was "leaning forward and to the side like he was placing something or trying to hide something in the vehicle."
 {¶ 8} As he waited for appellee to remove his driver's license from his wallet, Sergeant Greenwood saw "a silver top bowl to a marijuana pipe sticking out from under his leg and a bluish-green change purse and a Bic lighter sticking out from under his right thigh." Based upon his twelve-years of experience, the sergeant believed the pipe to be a marijuana pipe.
 {¶ 9} Sergeant Greenwood decided to call for assistance. Once the other officer, Trooper Woodyard, arrived, Sergeant Greenwood asked appellee to exit the vehicle. As appellee exited, he reached down between the door and the seat toward the floorboard. The officers then closed the door and told appellee to keep his hands where the officers could see them.
 {¶ 10} The next time the officers asked appellee to exit the vehicle, he again tried reaching underneath the passenger seat, where he was sitting. The officers thought appellee could be reaching for a weapon. The officers then closed the door and again asked appellee to exit the vehicle.
 {¶ 11} On the third attempt, appellee once again tried to reach under the seat. Trooper Woodyard then reached in the vehicle, grasped appellee's right arm around the wrist, and pulled him from the vehicle. As the trooper pulled appellee from the vehicle, appellee's left hand went into the right side of his coat towards the waistband. Sergeant Greenwood tried to grab appellee's right hand, but appellee struggled with the officers and refused to produce his right hand. After intense struggling, the officers arrested appellee.
 {¶ 12} Appellee subsequently was charged with (1) assault, in violation of R.C. 2903.13(A), (2) obstructing official business, in violation of R.C. 2921.31, (3) resisting arrest, in violation of R.C.2921.33(A), (4) possession of drug paraphernalia, in violation of R.C.2925.14(C)(1), (5) possession of marijuana, in violation of R.C.2925.11(A), and (6) failure to wear a seat belt, in violation of R.C.4513.263.
 {¶ 13} In July of 2002, appellee filed a motion to suppress. He argued that Sergeant Greenwood lacked probable cause or reasonable suspicion to stop the vehicle. Appellee contended that the stop violated the Fourth Amendment because the officer stopped the vehicle for a traffic offense that could not be enforced due to the sign's failure to comply with the OMUTCD. Appellee thus asserted that the trial court must suppress the evidence obtained after the stop of the vehicle. Appellee further contended that the officer lacked reasonable suspicion to order him from the vehicle or probable cause to arrest him.
 {¶ 14} At the motion to suppress hearing, appellee presented evidence showing that the u-turn sign did not comply with the OMUTCD. Kenneth Highland, a licensed surveyor, testified that he measured the u-turn signs at the crossover where Brooks made the u-turn. He stated that the bottoms of the two signs were 5.25 feet and 4.55 feet, respectively, above the edge of the pavement on U.S. Route 33. The OMUTCD requires the bottom of a sign prohibiting u-turns to be six feet above the edge of the pavement.
 {¶ 15} The trial court granted appellee's motion, citing the following two cases: (1) State v. Carter (1994), 69 Ohio St.3d 57,630 N.E.2d 355; and (2) Whren v. United States (1996), 517 U.S. 806,116 S.Ct. 1769.
 {¶ 16} The state timely appealed the trial court's judgment and raises the following assignment of error: "The trial court committed reversible error in granting defendant's motion to suppress pursuant toState v. Carter 69 Ohio St.3d 57 and W[h]ren v. U.S. 517 U.S. 806."
 {¶ 17} In its sole assignment of error, the state argues that the trial court erroneously granted appellee's motion to suppress. First, the state asserts that the trial court improperly determined that appellee had standing to challenge the legality of the stop. Second, the state contends that the trial court incorrectly determined that a law enforcement officer lacks reasonable suspicion or probable cause to stop a vehicle when the officer observes the driver of the vehicle make a u-turn at a crossing that contains a sign prohibiting u-turns when evidence later reveals that the sign failed to comply with the OMUTCD.
 A STANDARD OF REVIEW {¶ 18} Appellate review of a trial court's decision regarding a motion to suppress involves mixed questions of law and fact. See Statev. Featherstone, 150 Ohio App.3d 24, 778 N.E.2d 1124, 2002-Ohio-6028, at ¶ 10 (citing State v. Vest (May 29, 2001), Ross App. No. 00CA2576);State v. Long (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1. The trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. See, e.g., State v. Dunlap (1995), 73 Ohio St.3d 308, 314,652 N.E.2d 988; State v. Fanning (1982), 1 Ohio St.3d 19, 20,437 N.E.2d 583; State v. Medcalf (1996), 111 Ohio App.3d 142, 145,675 N.E.2d 1268. Accordingly, in our review we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. See, e.g., State v. Fausnaugh (Apr. 30, 1992), Ross App. No. 1778. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. SeeFeatherstone; State v. Fields (Nov. 29, 1999), Hocking App. No. 99 CA 11. See, generally, United States v. Arvizu (2002), 534 U.S. 266,122 S.Ct. 744, 151 L.Ed.2d 740; Ornelas v. United States (1996), 517 U.S. 690,116 S.Ct. 1657, 134 L.Ed.2d 911.
 B APPELLEE HAS STANDING TO CHALLENGE THE VALIDITY OF THE TRAFFIC STOP {¶ 19} Passengers and the driver of a vehicle each have standing to challenge the legality of a traffic stop "because when the vehicle is stopped, they are equally seized, and their freedom of movement is equally affected." State v. Carter (1994), 69 Ohio St.3d 57, 63,630 N.E.2d 355; see, also, State v. Jones, Marion App. No. 9-02-39,2003-Ohio-1576. In Carter, the court stated: "If either the stopping of a car or the passenger's removal from it is unreasonable in aFourth Amendment sense, then surely the passenger has standing to object to those constitutional violations and to have suppressed any evidence found in the car which is their fruit." Id.
 ¶ 20 Here, despite appellant's argument to the contrary, Carter
recognizes that appellee, a passenger in a vehicle, has standing to argue that the stop was unreasonable. Carter is not limited to its facts. SeeState v. Mesley (1999), 134 Ohio App.3d 833, 841, 732 N.E.2d 477
(concluding that the defendant had standing to challenge the legality of a seizure even though he was simply a passenger). Therefore, appellant's argument that appellee lacks standing to challenge the legality of the stop is meritless.
 C THE OFFICER POSSESSED REASONABLE SUSPICION AND PROBABLE CAUSE TO CONDUCT THE TRAFFIC STOP {¶ 21} Appellant next contends that the trial court erred by concluding that the failure of the u-turn sign to conform to the OMUTCD meant that the stop was not based upon reasonable suspicion or probable cause.
 {¶ 22} The Fourth Amendment to the United States Constitution protects individuals against unreasonable governmental searches and seizures. See, e.g., Arvizu, 534 U.S. at 273; Terry v. Ohio (1968),392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889. "Searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." Katzv. United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507,19 L.Ed.2d 576. Once the defendant demonstrates that he was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible. See Maumee v. Weisner (1999), 87 Ohio St.3d 295, 297,720 N.E.2d 507; Xenia v. Wallace (1988), 37 Ohio St.3d 216, 524 N.E.2d 889, paragraph two of the syllabus.
 {¶ 23} A traffic stop is reasonable when an officer possesses probable cause to believe that an individual has committed a traffic violation. See Whren v. United States (1996), 517 U.S. 806, 809,116 S.Ct. 1769, 135 L.Ed.2d 89 (stating that the Fourth Amendment's reasonable requirement is fulfilled and a law enforcement officer may constitutionally stop the driver of a vehicle when the officer possesses probable cause to believe that the driver of the vehicle has committed a traffic violation); see, also, Dayton v. Erickson (1996), 76 Ohio St.3d 3,11-12, 665 N.E.2d 1091.
 {¶ 24} In the absence of probable cause to believe that the driver of a vehicle has committed a traffic violation, a law enforcement officer may not stop the vehicle unless the officer observes facts giving rise to a reasonable suspicion of criminal activity, including a traffic violation. See, generally, Terry v. Ohio (1968), 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889; State v. Andrews (1991), 57 Ohio St.3d 86,565 N.E.2d 1271; State v. Venham (1994), 96 Ohio App.3d 649, 654,645 N.E.2d 831. To justify a traffic stop based upon less than probable cause, the officer must be able to articulate specific facts which would warrant a person of reasonable caution in the belief that the person stopped has committed or is committing a crime, including a minor traffic violation. See Erickson, 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091; Terry, supra.
 {¶ 25} A court that is determining whether a law enforcement officer possessed reasonable suspicion or probable cause to stop a vehicle must examine the "totality of the circumstances." See, e.g.,Arvizu, 534 U.S. at 273. Moreover, the "touchstone" of a Fourth Amendment analysis is the reasonableness of the intrusion. See, e.g., Pennsylvaniav. Mimms (1977), 434 U.S. 106, 108-109, 98 S.Ct. 330, 54 L.Ed.2d 331.
 {¶ 26} It is well-settled that a law enforcement officer possesses both reasonable suspicion and probable cause to stop a vehicle when the officer observes a traffic violation. The issue here, however, is whether an officer possesses reasonable suspicion or probable cause to stop a vehicle for committing what the officer reasonably believes to be a traffic violation, when evidence subsequently reveals that the traffic violation cannot be enforced due to the failure of the traffic control device to comply with the OMUTCD.
 {¶ 27} R.C. 4511.11(D) requires all traffic control devices to conform to the OMUTCD. R.C. 4511.12 prohibits enforcement of an alleged traffic violation "if at the time and place of the alleged violation an official sign is not in proper position and sufficiently legible to be seen by an ordinarily observant person." R.C. 4511.12 "creates a legal excuse for the criminal violation." White v. Ohio Dept. of Transp.
(1990), 56 Ohio St.3d 39, 43, 564 N.E.2d 462.
 {¶ 28} While R.C. 4511.12 creates a legal excuse for the criminal violation, some courts have extended the meaning of the word "enforced," as used in R.C. 4511.12, to mean that if the traffic sign fails to conform to the OMUTCD, reasonable suspicion or probable cause to stop the vehicle does not exist.
 {¶ 29} For example, in State v. Millhouse (Feb. 3, 1995), Lawrence App. No. 94CA4, we determined that an officer could not conduct a traffic stop when the defendant ran a stop sign that essentially was illegible. In Millhouse, the officer admitted that the stop sign was old, faded, and poorly maintained. He also testified that the stop sign, being "anywhere between three and four" feet above the ground, failed to comply with the OMUTCD's minimum height requirements. The officer stated that he did not stop everyone who failed to stop at that stop sign, but that he stopped the defendant because the officer knew he lived in the neighborhood and the defendant should have known that the stop sign was there. Under these particular circumstances, we concluded that the officer lacked reasonable suspicion or probable cause to stop the defendant's vehicle.
 {¶ 30} In State v. Berry, Wood App. No. WD-02-043,2003-Ohio-1620, the court invalidated a traffic stop when the traffic sign prohibiting the alleged offense was not a sign that the OMUTCD recognizes. In Berry, the officer stopped the defendant's car after seeing it exit a parking lot where "Do Not Exit" signs had been posted. The OMUTCD did not contain a "Do Not Exit" sign. Thus, because the officer stopped the defendant for a traffic violation that did not exist, the court concluded that the officer did not possess reasonable suspicion or probable cause to stop the defendant's vehicle.
 {¶ 31} Here, the officer stopped the vehicle in which appellee was a passenger for crossing at a point where signs prohibiting u-turns were present. These signs failed to comply with the OMUTCD solely on the regard that they were approximately one foot lower than the standard. Nothing in the record shows that the signs were not sufficiently legible. Thus, this case differs from both Millhouse and Berry. In Millhouse, the sign basically was illegible, while in Berry, the OMUTCD contained no such sign.
 {¶ 32} Furthermore, to state that an officer who is traveling upon the highway first must measure a traffic sign to determine its compliance with the OMUTCD before he can acquire reasonable suspicion to initiate a traffic stop smacks of scientific certainty, which reasonable suspicion does not require. See Illinois v. Wardlow (2000), 528 U.S. 119, 125,120 S.Ct. 673, 145 L.Ed.2d 570 (stating that in determining whether reasonable suspicion exists, courts "cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists").[1]
Instead, as courts have recognized over and over again, reasonable suspicion sufficient to conduct a stop exists if there is "at least a minimal level of objective justification for making the stop." Wardlow,528 U.S. at 124.
 {¶ 33} To hold otherwise would require a law enforcement officer to measure the height of a u-turn sign (or any traffic sign) before stopping a vehicle based upon a suspicion that the driver committed a traffic offense. Traffic safety and enforcement of the traffic rules are legitimate concerns. To promote highway safety, officers must be afforded some leeway in investigating traffic violations. To demand certainty that a traffic sign complies with the OMUTCD before stopping a vehicle that the officer reasonably believes is violating the traffic rules would allow those who put other travelers in harm's way to continue unabated. Thus, law enforcement officers need not confirm strict compliance with the OMUTCD in order to make a stop reasonable under the Fourth Amendment where non-compliance would not be blatantly obvious.
 {¶ 34} Moreover, the issue of whether the traffic violation can be prosecuted, as raised in a motion to dismiss, is a different question from whether the traffic violation gives the officer reasonable suspicion or probable cause to stop the vehicle, as raised in a motion to suppress. Thus, the cases appellee cites are inapposite. See, e.g., Lyndhurst v.McGinness (2000), 138 Ohio App.3d 617, 741 N.E.2d 976; Bowling Green v.McNamara (1999), 132 Ohio App.3d 240, 724 N.E.2d 1175; Maple Heights v.Smith (1999), 131 Ohio App.3d 406, 722 N.E.2d 607. Although R.C. 4511.12
"creates a legal excuse for the criminal violation" White v. Ohio Dept.of Transp. (1990), 56 Ohio St.3d 39, 43, 564 N.E.2d 462 and ultimately may prevent a conviction, it does not create an avenue for invalidating a traffic stop.
 {¶ 35} Thus, the trial court improperly concluded that the officer lacked reasonable suspicion or probable cause to stop the vehicle for a traffic violation.
 D THE OFFICER JUSTIFIABLY ORDERED APPELLEE TO EXIT THE VEHICLE AND POSSESSED PROBABLE CAUSE TO ARREST APPELLEE {¶ 36} Although we agree with appellant's argument, appellee raises an alternate ground upon which we can uphold the trial court's judgment. Appellee contends that after the officer stopped the vehicle, the officer did not have any valid reason to order him to exit the vehicle. Appellee argues that the officer's stated basis for ordering him out of the car and seizing him, i.e., appellee's furtive movements and observation of the pipe, did not provide the officer with sufficient cause to do so. Appellee further asserts that the officer lacked probable cause to arrest him. Appellee's arguments are without merit.
 {¶ 37} Law enforcement officers do not need to acquire probable cause or reasonable suspicion of criminal activity before ordering occupants out of a vehicle. See Maryland v. Wilson (1997), 519 U.S. 408,415, 117 S.Ct. 882, 137 L.Ed.2d 41; Pennsylvania v. Mimms (1977),434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331; State v. Lozada (2001),92 Ohio St.3d 74, 81, 748 N.E.2d 520. "However, once a passenger has left the vehicle, the officer must possess specific and articulable facts to believe that a passenger is armed and dangerous, or is engaged in criminal activity, to justify any further intrusions." State v. Isbele
(2001), 144 Ohio App.3d 780, 784-785, 761 N.E.2d 697.
 {¶ 38} A warrantless arrest is constitutionally valid if "[a]t the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the * * * [individual] had committed or was committing an offense." State v.Heston (1972), 29 Ohio St.2d 152, 155-156, 280 N.E.2d 376; see, also,Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142. However, "[a]bsent one or more of the exceptions specified in R.C. 2935.26, a full custodial arrest for a minor misdemeanor offense violates theFourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution." State v. Jones (2000),88 Ohio St.3d 430, 727 N.E.2d 886, syllabus, modified in part, State v.Brown, 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175.
 {¶ 39} Here, because appellee was a passenger in a vehicle that the officer lawfully stopped for a traffic violation, the officer was free to order appellee to exit the vehicle. Once he did so, appellee acted uncooperatively and combatively, leading to a physical struggle. The officers reasonably believed that appellee may have been reaching for a weapon, so they continued to attempt to restrain appellee. Because appellee physically struggled, the officers then acquired probable cause to believe that appellee committed the offense of resisting arrest, a second degree misdemeanor, or the offense of obstructing official business, another second-degree misdemeanor. Under these circumstances, the officers acted reasonably in arresting appellee.
 {¶ 40} Appellee's argument that the officers lacked authority to arrest him for a minor misdemeanor, while legally correct, does not apply here. The state ultimately charged appellee with several offenses, each varying degrees of misdemeanors. One of the offenses that led to appellee's arrest was a second-degree misdemeanor, and, therefore, Jones
does not prohibit the arrest.
 {¶ 41} Consequently, appellee's arguments that the officers lacked reasonable suspicion to order him out of the vehicle or probable cause to arrest him are without merit.
 {¶ 42} Accordingly, we sustain the state's assignment of error and reverse the trial court's judgment.
Judgment reversed and cause remanded.
Abele, J., Concurs in Judgment and Opinion.
[1] As the United States Supreme Court explained in Atwater v. LagoVista (2001), 532 U.S. 318, 347, 121 S.Ct. 1536, 149 L.Ed.2d 549: "Often enough, the Fourth Amendment has to be applied on the spur (and in the heat) of the moment, and the object in implementing its command of reasonableness is to draw standards sufficiently clear and simple to be applied with a fair prospect of surviving judicial second-guessing months and years after an arrest or search is made. Courts attempting to strike a reasonable Fourth Amendment balance thus credit the government's side with an essential interest in readily administrable rules. See New Yorkv. Belton, 453 U.S. 454, 458, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (Fourth Amendment rules '"ought to be expressed in terms that are readily applicable by the police in the context of the law enforcement activities in which they are necessarily engaged"' and not '"qualified by all sorts of ifs, ands, and buts"')."