{¶ 25} I must respectfully dissent. I believe the judgment of the trial court granting Newrones' motion to suppress should be affirmed, because Officer Beaver did not have sufficient reasonable suspicion to justify the traffic stop.
 {¶ 26} The state argues that Officer Beaver was justified in stopping Newrones due to her weaving. I disagree. Officer Beaver testified that Newrones was weaving; however, the following colloquy occurred on cross-examination:
 {¶ 27} "Q: [by defense counsel] You indicated that you had all these suspicions, from her being in the C.V.S. parking lot and her touching the edge lines and her not driving the full speed limit, but none the less you did not initiate a traffic stop at any particular point along that route, correct?
 {¶ 28} "A: [Officer Beaver] That's correct.
 {¶ 29} "Q: And had she gone a hundred more feet she would have been beyond your jurisdiction?
 {¶ 30} "A: That's correct."
 {¶ 31} Officer Beaver testified that, if instead of turning onto Crain Center, had Newrones driven only one hundred feet further on Route 43, she would have entered Aurora and he would have discontinued his pursuit. He did not follow Newrones on to Crain Center or attempt to stop her for turning onto the industrial parkway. Thus, this testimony reveals that Officer Beaver would not have stopped Newrones had she not turned onto Crain Center and executed the U-turn.
 {¶ 32} The trial court found that Officer Beaver did not believe the weaving was reasonably suspicious to warrant a stop. By implication, the trial court found that the weaving in this case was insufficient to justify a stop. If supported by competent, credible evidence, the trial court's factual determination of the extent of the weaving must be accepted by the reviewing court.[2] After applying the trial court's finding, I agree with the trial court's conclusion that the totality of the circumstances up to the U-turn did not justify an investigatory stop.
 {¶ 33} This leaves the U-turn on Crain Center. "U-turns are generally permitted upon Ohio's roadways."[3] The state did not present any evidence indicating that Newrones received a citation for the U-turn or that the U-turn was illegal.
 {¶ 34} I do not agree with the majority's conclusion that the U-turn was an evasive action. Newrones was followed by Officer Beaver for more than two miles. During this time, she never exceeded the posted speed limit. Finally, she used her turn signal prior to turning on to Crain Center. These actions are not consistent with "evasive" behavior.
 {¶ 35} I cannot say the execution of the U-turn coupled with the other circumstances was sufficient to justify this stop. A legal U-turn is not indicative of a crime being committed. Thus, since Officer Beaver did not have reasonable suspicion to justify a stop of Newrones' vehicle prior to the completion of the U-turn, I cannot say he had reasonable suspicion after the U-turn.
 {¶ 36} I would affirm the judgment of the trial court.
[2] State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8.
[3] State v. Dunfee, 4th Dist. No. 02CA37, 2003-Ohio-5970, at ¶ 48, (Evans, P.J., dissenting.), citing R.C. 4511.35 and4511.37.