CITY OF BOWLING GREEN, Appellant,

v.

LYNN, Appellee.

[Cite as Bowling Green v. Lynn, 165 Ohio App.3d 825, 2006-Ohio-1401.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–05–077.

Decided March 24, 2006.

Matthew L. Reger, Bowling Green Prosecuting Attorney, for appellant.

Norman J. Geer, for appellee.

PARISH, Judge.

{¶ 1} This is an appeal from a judgment of the Bowling Green Municipal Court granting appellee's motion to suppress, and ruling that the officer lacked reasonable, articulable suspicion to support a traffic stop of appellee. For the reasons set forth below, the trial court judgment is reversed and remanded.

{¶ 2} On appeal, appellant sets forth a single assignment of error:

{¶ 3} "The trial court erred in granting the appellee's motion to suppress as there was reasonable articulable suspicion to stop the appellee's vehicle."

{¶ 4} The following undisputed facts are relevant to the issue raised on appeal. On June 4, 2005, at 2:15 a.m., appellee was stopped by a Bowling Green police officer. The officer observed appellee violate a "no turn on red" traffic-control sign posted at a major intersection. Following the stop, appellee was charged with operating a motor vehicle under the influence of alcohol, prohibited alcohol content, and possessing an open alcohol container in a motor vehicle.

{¶ 5} Appellee filed a motion to suppress, asserting that the officer lacked reasonable articulable suspicion to conduct the traffic stop. On September 27, 2005, a hearing was conducted on appellee's motion to suppress. The substantive basis of appellee's motion is the contention that because the traffic-control sign which appellee violated was never formally "authorized" by the Bowling Green City Council, the officer's reasonable, articulable suspicion is fatally compromised. In support, appellee argued that "no conviction is possible due to a prohibition which is not enforceable by reason of unauthorized signs."

{¶ 6} Simply put, appellee maintains that because she could not be convicted of the traffic-sign violation, the entire stop is fatally compromised. Appellee relies upon the recent decision by this court in State v. Godwin (June 24, 2005), 6th Dist. No. WD–04–094, 2005-Ohio-3204, 2005 WL 1492059. The trial court concurred in this analogy.

{¶ 7} On September 28, 2005, the trial court filed its decision on the motion to suppress. The trial court held, "[B]ased upon Sixth Court of Appeals holding in State v. Godwin, 2005-Ohio-3204, this court finds that Officer Clingenpeel did not

have reasonable, articulable suspicion to stop the defendant since the 'no turn on red' sign was never approved by city council nor placed in the city traffic control file. Defendant's motion to suppress evidence flowing from her traffic stop is granted." On October 3, 2005, appellant filed a notice of appeal.

{¶ 8} In order to determine the veracity of appellant's assignment of error, we must identify the determinative facts relied upon in *Godwin,* compare them with the determinative facts in this case, and ascertain whether the cases are substantively analogous. If so, the *Godwin* holding will determine the outcome of this case. We must identify what the court relied upon to support its legal conclusions in *Godwin.*

{¶ 9} In its assignment of error, appellant asserts that the trial court erred in determining that the officer lacked reasonable, articulable suspicion to stop appellee's vehicle and, thus, erred in granting appellee's motion to suppress. The *Godwin* case stems from a November 14, 2003 traffic stop in response to a motorist's violation of a municipal-parking-lot traffic-control sign. It was later determined that the sign violated in *Godwin* was not formally authorized by the Bowling Green Traffic Commission. However, the sign in *Godwin* is a type of sign expressly authorized by the Ohio Manual of Uniform Traffic Control Devices ("OMUTCD"). The sign in *Godwin* complied with the technical specifications mandated by the OMUTCD.

{¶ 10} Despite full OMUTCD compliance, the sign in *Godwin* was not formally authorized by the local traffic commission or city council. On that basis, this court applied the facts in *Godwin* to our analysis in *State v. Berry,* 6th Dist. No. WD–02–043, 2003-Ohio-1620, 2003 WL 1699840, and concluded the officer lacked reasonable, articulable suspicion to stop appellee's vehicle.

{¶ 11} Given the above, to assess the legitimacy of appellee's *Godwin*-based argument, we must also examine *Berry. Godwin*'s reliance upon *Berry* furnishes the factual and legal context of the *Godwin* ruling. The *Berry* case arose from a traffic sign at the exact same location as the sign in *Godwin.* The *Berry* case, like *Godwin* and this case, involved a late-night traffic stop resulting in the discovery of alcohol and/or drug violations in Bowling Green.

{¶ 12} The *Berry* case began in 2002. On June 2, 2002, an officer observed a vehicle violate a municipal parking lot traffic-control sign. The traffic sign in *Berry* read "Do not exit." It was determined that the OMUTCD did not authorize the existence of such a sign. Thus, the sign itself was not recognized or permitted by OMUTCD and was intrinsically unenforceable and a nullity.

{¶ 13} Based upon the null status of the sign, this court held in *Berry* that the officer lacked reasonable, articulable suspicion specifically because the sign itself

could never legitimately exist pursuant to OMUTCD. This unique factual scenario is what legally negated reasonable, articulable suspicion.

{¶ 14} In response to *Berry*, the city of Bowling Green erected a new traffic-control sign at the same location. This replacement sign was a type of sign specifically authorized by OMUTCD. The replacement sign was the subject of *Godwin.*

{¶ 15} Significantly, this court explicitly cautioned against a mistakenly over-broad interpretation of the impact of the *Berry* ruling. We stated in *Berry,* "Our decision should not be misinterpreted as saying that anytime an officer stops a driver for an offense for which the offender may ultimately be acquitted, the officer did not have reasonable, articulable suspicion to stop the offender. We have, in fact, held otherwise." *Berry* at ¶ 11.

{¶ 16} Nevertheless, the majority in *Godwin* held that because the replacement sign was unenforceable, the officer lacked reasonable, articulable suspicion. The *Godwin* court held, "The officer did not observe a traffic violation because the 'wrong way do not enter' and 'no left/right turn' signs were not enforceable. Absent an offense, there is no reason to stop appellant's vehicle."

{¶ 17} The factual basis for not enforcing the parking-lot traffic sign in *Berry* was that the sign's very existence was not authorized by OMUTCD. The sign was a nullity under any circumstances. In *Godwin,* the factual basis for not enforcing the replacement sign was the failure of the Bowling Green traffic commission or city council to formally authorize the replacement sign. The sign's existence was permitted and was in conformity with the specifications set forth in the OMUTCD.

{¶ 18} We find that there are fundamental, determinative factual distinctions between this case and *Godwin.* These critical distinctions render this case materially distinguishable from *Godwin.* This case is not controlled by this court's decision in *Godwin.*

{¶ 19} The determinative fact in *Berry* was that the sign's very existence was a nullity under the OMUTCD. It was not authorized under any circumstances, regardless of local authorizations or approvals. As a legal nullity, it was wholly unenforceable. *Godwin* arose from the replacement sign at this same location. The replacement sign was constructed due to *Berry.* By contrast, this case involves a common, widely used, "no turn on red" intersection sign authorized by OMUTCD.

{¶ 20} This court held in *Godwin* that the officer also lacked reasonable, articulable suspicion because the sign was a nullity. The court held that the officer could not have had reasonable, articulable suspicion that the defendant

was violating the law because the sign was a nullity; it did not exist under Ohio law.

{¶ 21} In this case, the record shows that the disputed traffic control is authorized by OMUTCD. Thus, *Godwin* is inapplicable to our analysis of this case. We adhere to the position delineated by this court in its analysis in the *Berry* decision. *Berry* explicitly acknowledged that an officer can possess reasonable, articulable suspicion in support of a stop despite a defendant being acquitted for the offense for which the stop was initiated.

{¶ 22} As applied to this case, we find that although the failure of the Bowling Green traffic commission or city council to formally authorize the no-turn-on-red sign may prohibit enforcement of the sign, it did not negate an officer's reasonable, articulable suspicion to initiate an investigatory traffic stop based upon observation of a violation of that disputed traffic sign.

{¶ 23} Our position is in conformity with our holding in *State v. Nickelson* (July 20, 2001), 6th Dist. No. H–00–036, 2001 WL 1028878, in which, as summarized in *Berry*, at ¶ 11, we held that "the officer did not need to prove beyond a reasonable doubt that the driver was violating the statute; he needed only reasonable suspicion that the driver was violating the ordinance. We held that the officer had such reasonable suspicion under those circumstances." We affirmed this legal principle in *Berry*, the case relied upon by *Godwin*.

{¶ 24} Other appellate courts in Ohio have come to similar conclusions. In *State v. Dunfee*, 4th Dist. No. 02–CA37, 2003-Ohio-5970, 2003 WL 22532819, the Fourth District held that the *Berry* decision did not invalidate an officer's reasonable, articulable suspicion in making a traffic stop for a violation of a "no u turn" sign even after it was revealed that the disputed sign was constructed one foot smaller than called for by the OMUTCD. The *Dunfee* court found that although the disputed sign was not enforceable, reasonable, articulable suspicion was not compromised.

{¶ 25} Similarly, we conclude that although the violation of the no-turn-on-red sign is unenforceable, the officer in this case possessed reasonable, articulable suspicion to make the stop.

{¶ 26} We have thoroughly reviewed and considered the record in this case. This case is materially distinguishable from *Godwin*. We find the officer possessed reasonable, articulable suspicion. This finding is based upon the facts of this case in conjunction with our opinions in *Berry* and *Nickelson* and the Fourth District holding in *Dunfee*.

{¶ 27} *Godwin* does not support appellee's motion to suppress. The trial court erred in granting the motion to suppress. The enforceability of the "no turn on

red" sign did not negate the officer's reasonable, articulable suspicion. The stop was proper. Appellant's assignment of error is well taken.

{¶ 28} On consideration whereof, the judgment of the Wood County Court of Common Pleas is reversed and remanded. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal are awarded to Wood County.

Judgment reversed
and cause remanded.

HANDWORK and SKOW, JJ., concur.