DECISION AND JUDGMENT ENTRY.
{¶ 1} After pleading no contest to operating a vehicle while impaired, Johnny Emerick contends the trial court erred in denying his motion to suppress. Emerick argues as a matter of law the trooper who stopped him lacked a reasonable, articulable suspicion for making the stop. He also contends the trial court's factual finding that a crack in his windshield was visible to the trooper is not supported by the record.
 {¶ 2} Emerick bases his argument that the stop was improper on the premise that "the crack in his windshield did not constitute a violation" of the statute. Thus, he concludes the crack did not justify the stop. In order to justify the stop, the officer needed only a reasonable, articulable suspicion that Emerick was driving with a crack that rendered the vehicle unsafe. The trooper testified that he observed the crack as *Page 2 
Emerick passed him less than four feet away in the passing lane. And the pictures of the windshield show a crack at least eighteen inches long starting above the steering wheel on the driver's side of the windshield. While that evidence might not support a conviction, it satisfies the lesser threshold for a traffic stop as a matter of law because the crack is "substantial" and located where it might affect the driver.
 {¶ 3} We also reject the contention that the evidence does not support the court's factual finding that the crack was visible to the trooper before he made the stop. Based upon two of the defense photos that do not show the crack, Emerick concludes it was impossible for the trooper to see it before the stop. Due to this purported impossibility, Emerick claims the trooper's testimony cannot be credible or true. The trial court relied upon the photo that most closely approximated the trooper's view of the windshield to conclude it was visible. Because that photo clearly showed the crack and supports the trooper's testimony, we reject this argument also.
 I. FACTS {¶ 4} While Trooper Todd McDonald was driving southbound on a four-lane highway, he noticed another southbound vehicle passing him in the outside lane. The car's passenger was "dancing and waving" at the trooper. Looking more closely at the passing vehicle from approximately four feet away, McDonald observed a crack in the windshield on the driver's side. When he stopped the car because of an "equipment violation," he immediately noticed the driver, Johnny Emerick, had been drinking. The trooper cited Emerick for both the cracked windshield and impaired driving.
 {¶ 5} Emerick filed a motion to suppress the evidence of impairment on the basis that the initial stop violated the constitutional prohibition against unreasonable *Page 3 
seizures. Because it was "impossible" to see the crack until after the car was stopped, he contended the real basis for the stop was the passenger's conduct, which could not justify the seizure.
 {¶ 6} At the hearing on the motion, Trooper McDonald unequivocally stated he stopped Emerick's car because he observed a sizable crack in the windshield. He indicated the passenger's odd behavior drew his attention to the car and then he observed the crack as Emerick passed him in the outside lane, less than four feet away.
 {¶ 7} Emerick also testified, and he claimed McDonald said he made the stop because of the passenger's odd, but legal conduct. Emerick introduced four photographs of the windshield, two of which failed to show a crack. While two of the exhibits did reveal the crack, Emerick argued those two did not correspond to the trooper's view of the windshield as the cars passed. From that proposition, he concluded it was impossible for the trooper to have seen the crack until after the car had stopped. Emerick argued the sole basis for the stop was the passenger's dancing and waving, which legally could not support a seizure under the Fourth Amendment.
 {¶ 8} The trial court viewed the photos, found the trooper's testimony was credible, concluded probable cause for an equipment violation existed, and denied the motion. After pleading no contest and being found guilty of operating a vehicle under the influence, Emerick filed this appeal.
 II. ASSIGNMENTS OF ERROR {¶ 9} Emerick presents one assignment of error:
 THE TRIAL COURT ERRED IN OVERRULING MR. EMERICK'S MOTION TO SUPPRESS, IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES *Page 4 
CONSTITUTION, AND SECTION 14, ARTICLE 1 OF THE OHIO CONSTITUTION.
 {¶ 10} While the trial court found the existence of probable cause, Emerick limits his argument to the issue of an investigative stop, i.e., whether the trooper had a reasonable, articulable suspicion of a traffic code violation. Accordingly, we limit our review to the existence of that latter question.
 III. STANDARD OF REVIEW {¶ 11} Appellate review of a trial court's decision regarding a motion to suppress involves mixed questions of law and fact. State v.Featherstone, 150 Ohio App.3d 24, 2002-Ohio-6028, 778 N.E.2d 1124, at paragraph 10, citing State v. Vest, Ross App. No. 00CA2576, 2001-Ohio-2394; State v. Long (1998), 127 Ohio App.3d 328, 332,713 N.E.2d 1. When ruling on a motion to suppress, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility. State v.Dunlap, 73 Ohio St.3d 308, 314, 1995-Ohio-243, 652 N.E.2d 988; State v.Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 582. Accordingly, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Dunlap; Long; State v. Medcalf (1996),111 Ohio App.3d 142, 675 N.E.2d 1268. Accepting those facts as true, we must independently determine as a matter of law whether they satisfy the appropriate legal standard, i.e., a reasonable, articulable suspicion of criminal activity. Featherstone; Medcalf; State v. Fields (Nov. 29, 1999), Hocking App. No. 99 CA 11, 1999 WL 1125120.
 IV. TRAFFIC STOPS {¶ 12} Emerick contends the stop of his vehicle violated his Fourth Amendment right to be free from unreasonable searches because it did not meet the requirements *Page 5 
for an investigative stop established in Terry v. Ohio (1968),392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, and Delaware v. Prouse (1979),440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660.
 {¶ 13} As the Supreme Court of the United States has held, traffic stops are seizures within the protection of the Fourth Amendment. Id. Thus, at a minimum, a traffic stop must be based upon a reasonable, articulable suspicion that the driver is violating the law, i.e., that a traffic or equipment violation is present. See Dayton v. Erikson (1996),76 Ohio St.3d 3 at 7, 665 N.E.2d 1091. In reviewing the intrusion, the court must view the stop in light of the totality of the circumstances giving due weight to the officer's experience and training. SeeState v. Bobo (1988), 37 Ohio St.3d 177, 179, 524 N.E.2d 489. The touchstone of any Fourth Amendment analysis is the reasonableness of the intrusion. See, e.g., State v. Dunfee, Athens App. No. 02CA37,2003-Ohio-5970 at ¶ 25, citing Pennsylvania v. Mimms (1977),434 U.S. 106, 108-109, 98 S.Ct. 330, 54 L.Ed.2d 331.
 A. Equipment Violations {¶ 14} Erickson argues the stop was unconstitutional because the crack in his windshield did not render his vehicle unsafe, and thus, did not constitute a violation of R.C. 4513.02(A). That statute prohibits driving "any vehicle. . . which is in such unsafe condition as to endanger any person."
 {¶ 15} In order to justify a stop under R.C. 4513.02(A), a trooper must have an articulate, reasonable suspicion that a crack in the windshield rendered the vehicle unsafe. See State v. Imboden (Nov. 16, 1993), Ross App. No. 92CA1901, 1993 WL 481388, citing State v.Myers (1990), 63 Ohio App.3d 765, 580 N.E.2d 61. As the *Page 6 
Second District noted in State v. Latham, Montgomery App. No. 20302,2004-Ohio-2314 at ¶ 14, the cases are very fact specific when determining whether a cracked windshield justifies a stop under the statute. We agree with their conclusion that an officer must have a reasonable, articulable suspicion that the crack is "substantial" or impairs the driver's vision before stopping the vehicle. Id. However, this requirement does not mean an officer must possess scientific certainty of a violation. Dunfee at ¶ 32. A traffic stop may pass constitutional muster even where the state cannot convict the driver due to a failure in meeting the burden of proof or a technical difficulty in enforcing the underlying statute or ordinance. Bowling Green v.Godwin, 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698 at ¶ 2 15 (dealing with probable cause rather than the lesser standard of reasonable suspicion). See, also, Dunfee at ¶ 32-34 (dealing with a traffic control device that did not conform to standards). Rather, a reasonable suspicion sufficient to justify a stop exists if there is "at least a minimum level of objective justification for making the stop."Dunfee at ¶ 32, citing Illinois v. Wardlow (2000), 528 U.S. 119, 124 125, 120 S.Ct. 673, 145 L.Ed.2d 570. The very purpose of an investigative stop is to determine whether criminal activity is afoot. This does not require scientific certainty of a violation nor does it invalidate a stop on the basis that the subsequent investigation reveals no illegal activity is present. See State v. Goins, Ross App. No. 95CA2106, 1996 WL 275084 (Harsha, J., concurring).
 B. Emerick's Windshield {¶ 16} Trooper McDonald was consistent and unequivocal in stating he observed a crack in Emerick's windshield from approximately four feet away. On direct examination he indicated the crack was obvious and significant. While the trooper failed *Page 7 
to describe the location of the crack or give his opinion on whether it rendered the vehicle unsafe or dangerous, he did indicate the photos showed the crack as being over a foot long. And, two of the photos, which were introduced into evidence, show a large crack starting above and slightly to the left of the steering wheel, i.e., in front of the driver, and proceeding at a downward angle to the middle of the windshield. This crack can only be described as significant, regardless of whether it ultimately satisfied the requirements for a conviction under R.C. 4513.02(A). Accordingly, we conclude the trooper had a reasonable, articulable suspicion that Emerick's vehicle was unsafe or dangerous and was justified in making an investigative stop to follow up on that suspicion.
 C. Trooper McDonald's Credibility {¶ 17} Emerick also argues the "stop. . . was improper because it was impossible for Sergeant McDonald to have seen the crack . . . before initiating the stop." In essence, he contends the equipment violation issue was an afterthought to subsequently justify the stop and that the trooper was untruthful in claiming it as the basis for the seizure. Emerick theorizes the sole reason for the stop was the behavior of his passenger, which did not justify the seizure.
 {¶ 18} This argument amounts to a challenge of the fact-finding function of the trial court. As we have already pointed out, the trial court's role involves evaluating witness credibility and determining the existence of disputed facts. Dunlap, supra, at 314. If the record contains competent, credible evidence to support the trial court's factual findings, we are duty bound to accept them. Dunfee, at ¶ 18. *Page 8 
 {¶ 19} Emerick relies upon the four photos he introduced as exhibits to support his proposition that McDonald was lying when he claimed to have seen the crack. Two of the photos, both taken from in front of Emerick's vehicle, do not in fact reveal the crack. However, McDonald indicated due to the effect of "glare," not all views or photos of the windshield would show the crack. Another photo, Exhibit 2, which is also taken from the front, but apparently closer and at a different angle than the other two, does show a large crack on the driver's side, starting above the steering wheel. More significantly, Exhibit 3, which was taken from inside the car and apparently in the driver's seat, clearly shows a significant crack going from left to right for approximately eighteen inches. The trial court concluded this view of the windshield most closely reflected the trooper's view of the windshield as Emerick passed him less than four feet away. The record supports this conclusion.
 {¶ 20} Thus, we believe the trial court's credibility determination and factual finding garner support from the record and it is our duty to accept them. In doing so, we conclude Emerick's "impossibility" theory is meritless. Emerick's assignment of error is not well-taken.
 JUDGMENT AFFIRMED. *Page 9 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 McFarland, P.J. and Kline, J.: Concur in Judgment and Opinion. *Page 1