OPINION
{¶ 1} The State of Ohio is appealing the judgment of the Montgomery County Common Pleas Court, which granted Thadeus Latham's motion to suppress.
 {¶ 2} On August 8, 2003, Officers Jack Simpson and Andrew Gillig were patrolling for traffic violations due to the high number of traffic complaints in the area. At approximately 3:30 p.m., the officers were traveling eastbound on Riverview in Dayton, Ohio. The officers were directly behind a truck being driven by Latham. The officers noticed that the windshield on the truck was cracked and decided to conduct an investigative stop as a result of the crack.
 {¶ 3} The officers pulled the vehicle over and approached the vehicle. Officer Simpson asked Latham, the sole occupant of the truck, for his driver's license. Latham produced an Ohio ID card. Latham then informed the officers that his license was suspended. Officer Simpson then asked Latham if he had any weapons. In response, Latham pulled a pocketknife out of his pants pocket. Officer Simpson then asked Latham to step out of the vehicle and conducted a pat down search of Latham. Finding no additional weapons, the officers placed Latham in the back of their cruiser while they verified his identity and wrote a citation for the cracked windshield, driving without a license, and driving while under suspension.
 {¶ 4} Due to the fact that the officers were near the end of their shift and the city attempts to strictly enforce overtime, the officers asked Latham if he could get someone to come and get the car rather than having it towed. Latham indicated that he could have someone come and get the vehicle. Officer Simpson then asked Latham if he had any weapons in the truck. When Latham hesitated, Officer Simpson asked again, and Latham told them that he had a loaded gun in a backpack located on the front seat of the truck. Officer Simpson went to the truck and found the loaded gun. Officer Simpson then returned to the cruiser and told Officer Gillig to read Latham his Miranda rights. Officer Gillig proceeded to read Latham his Miranda rights and inquired of Latham as to whether the gun belonged to him. Latham indicated that the gun did belong to him and responded that he had it for protection. Latham was subsequently arrested for carrying a concealed weapon and cited for the cracked windshield, driving without a license, and driving while under suspension.
 {¶ 5} On August 29, 2003, Latham was indicted on one count of carrying a concealed weapon in violation fo R.C. 2923.12(A). Subsequently, Latham filed a motion to suppress, and a hearing was held on the motion. On January 2, 2004, the trial court sustained Latham's motion. The State has filed this timely appeal from that determination.
 {¶ 6} The State raises the following assignment of error:
 {¶ 7} "The trial court erred when it suppressed the evidence in this case because the officers had reasonable suspicion to believe that the vehicle was operating in violation of the law."
 {¶ 8} The State argues that the trial court erred in determining that the officers did not have a reasonable suspicion that the crack in Latham's windshield was a violation of the law. We disagree.
 {¶ 9} Initially, we note that the following standard governs our review of a trial court's decision regarding a motion to suppress:
 {¶ 10} "[W]e are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard."State v. Retherford (1994), 93 Ohio App.3d 586, 592.
 {¶ 11} R.C. 4513.02(A) states, "No person shall drive or move, or cause or knowingly permit to be driven or moved, on any highway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person." R.C. 4513.02(B) further provides that, "[w]hen directed by any state highway patrol trooper, the operator of any motor vehicle shall stop and submit such motor vehicle to an inspection under division (B)(1) or (2) of this section, as appropriate, and such tests as are necessary."
 {¶ 12} Ohio Administrative Code 4501:2-1-11, which is under the section for inspection by Ohio state highway patrol officers, reads:
 {¶ 13} "Every motor vehicle shall be equipped with safety glass as required in Section 4513.26 of the Revised Code: Such glass shall be free of discoloration or diffusion, cracks, and unauthorized obstructions * * *"
 {¶ 14} Ohio state courts have disagreed as to whether a crack in the windshield of a vehicle justifies a stop pursuant to R.C.4513.02(A). State v. Wilhelmy (May 17, 2000), Hamilton App. No. C-990730 (holding that a police officer, who was not a state highway patrolman, did not have a reasonable suspicion to stop a vehicle whose windshield was cracked absent any evidence that the crack posed a threat to personal safety); State v. Glinsey
(Aug. 20, 1999) Williams App. No. WM-98026 (holding that a state highway patrolman did not have reasonable suspicion to stop a vehicle as unsafe when it had a crack in the windshield that extended four inches below the shaded portion of the windshield);State v. Repp, Knox App. No. 01-CA-11, 2001-Ohio-7034 (finding that a one to two foot long crack across the middle of the driver's side windshield of a vehicle was sufficient to create a reasonable suspicion to stop a vehicle as unsafe pursuant to R.C.4513.02(A) in a local police officer); State v. Heiney, Portage App. No. 2000-P-0081, 2001-Ohio-4287 (finding that a one foot long spider crack in the middle of a vehicle's windshield was "substantial" and gave a state highway patrolman reasonable suspicion that the crack rendered the vehicle unsafe and a violation of R.C. 4513.02); State v. Goins (May 24, 1996), Ross App. No. 95CA2106 (finding that a state highway patrolman had reasonable suspicion to stop a vehicle with a large linear crack in the front windshield for an equipment violation pursuant to R.C. 4513.02(A) and (B)); State v. Imboden (Nov. 16, 1993), Ross App. No. 92CA1901 (stating that a state highway patrolman did not have reasonable suspicion to stop a vehicle whose windshield was cracked on the passenger side of the vehicle, did not impair the driver's vision, and no evidence was presented that the cracked windshield affected the safeness of the vehicle). We note that in these opinions a crack in the windshield is generally found to amount to a reasonable suspicion of a violation of R.C. 4315.02(A) only when the crack is "substantial" or impairs the driver's vision. Id. Some courts have stated that the combination of R.C. 4513.02 (A) and O.A.C.4501:2-1-11 make it a violation to operate a vehicle with any cracks in the windshield because administrative agencies' rules have the full force and effect of law when issued pursuant to statutory authority. Repp, supra citing Doyle v. Ohio Bureauof Motor Vehicles (1990), 51 Ohio St.3d 46; Goins, supra. Although the Repp court stated that a crack in a windshield violates R.C. 4513.02(A), the court continued on to state that the size and placement of the crack is what created the reasonable suspicion that R.C. 4513.02(A) was being violated.Repp, supra.
 {¶ 15} In the instant case, the officers testified that the crack in Latham's windshield had been "not a very bad crack" but was "noticeable." The only evidence that the officers had a reasonable suspicion that the vehicle violated R.C. 4513.02 as an unsafe vehicle was Officer Simpson's statement under cross examination that he believed "it was an unsafe vehicle." (Tr. 19). The owner of the truck, Mrs. Latham, testified at the motion to suppress hearing about the truck and the crack in its windshield. Mrs. Latham testified that she had purchased the truck approximately three years prior and at the time the truck had had a crack in the windshield. (Id. at 46). Mrs. Latham entered into evidence pictures of the truck with a small, horizontal crack just above the windshield wiper between the driver's side of the vehicle and the middle of the vehicle. (Id. at 48). Mrs. Latham further testified that when she had driven the vehicle the crack did not obstruct her vision at all. (Id. at 49).
 {¶ 16} We find that this case is distinguishable fromGoins, supra because the officers who conducted the traffic stop of Latham were not state highway patrolmen who are authorized by R.C. 4513.02(B) to conduct stops of vehicles for the purposes of inspection of equipment. Rather, Officers Simpson and Gillig were Dayton police officers, and thus the issue is whether they had a reasonable suspicion that Latham was violating R.C. 4513.02(A) by operating an unsafe vehicle.
 {¶ 17} The State argues that when R.C. 4513.02(A) and O.A.C.4501:2-1-11 are read in conjunction, it becomes a violation of R.C. 4513.02(A) to operate a vehicle with any cracks in the windshield. Thus, under the State's interpretation, any crack in the windshield, regardless of how minor, renders the vehicle in an unsafe condition such that its operation would endanger persons. We disagree.
 {¶ 18} O.A.C. 4501:2-1-11 is the administrative section for Motor Vehicle Inspection by the state highway patrol. Thus, we agree with the trial court that this section of the administrative code relates to R.C. 4513.12(B) that authorizes the state highway patrol to stop and inspect vehicles. Although we agree that administrative agencies' rules that are issued pursuant to statutory authority have the force and effect of law, we do not agree that O.A.C. 4501:2-1-11 was issued pursuant to any authority set out in R.C. 4513.02(A). This is in marked contrast to R.C. 4513.241 that specifically authorizes the director of public safety to adopt rules governing the use of tinted glass on vehicle windshields as is set out in O.A.C. 4501-41.
 {¶ 19} Therefore, as the simple appearance of a crack in a windshield does not give rise to a reasonable suspicion of a violation of R.C. 4513.02(A), we must determine whether the particular facts surrounding the crack in the windshield in this case gave rise to a reasonable suspicion that Latham's truck was in an unsafe condition such that its operation would endanger persons. The trial court characterized the crack in Latham's truck as a "relatively short, horizontal, low crack on this truck windshield." Having reviewed the hearing testimony and the photographs of the truck's windshield entered into evidence, we agree with the trial court. The small crack in the windshield is low and would not appear to obstruct the vision of the driver of the truck. Considering the minor nature of the crack in the windshield, we cannot find that the officers had a reasonable suspicion that the small windshield crack had rendered the operation of the truck unsafe and in violation of R.C.4513.02(A).
 {¶ 20} Therefore, as the officers lacked a reasonable suspicion of a traffic violation to stop Latham, the trial court was proper in granting Latham's motion to suppress. The State's assignment of error is without merit and is overruled.
 {¶ 21} The judgment of the trial court is affirmed.
Brogan, J. and Wolff, J., concur.