**[Cite as *State v. Carey*, 2018-Ohio-831.]**

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | C.A. No. 28689 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MICHAEL CAREY | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR-2015-12-3894 |

DECISION AND JOURNAL ENTRY

Dated: March 7, 2018

TEODOSIO, Judge.

{¶1}   Appellant, Michael A. Carey, appeals from his convictions in the Summit County Court of Common Pleas.  This Court affirms.

I.

{¶2}   Summit County Sheriff's Deputy Bryce Lesnasky was in a GetGo parking lot when he noticed Mr. Carey's truck parked at a gas pump.  The deputy noticed what he described as a long, big crack in the truck's windshield, so he drove around to the front of the truck to get a better look at it.  While deciding whether to pull Mr. Carey over for the cracked windshield, the deputy followed Mr. Carey out of the lot and ran his license plate number.  According to Deputy Lesnasky, while following Mr. Carey he observed the truck swerving and driving over both the fog line and the median line.  The deputy initiated a traffic stop of Mr. Carey's vehicle.  During the traffic stop, the deputy noticed several indicators that Mr. Carey was possibly intoxicated, so

he conducted some field sobriety tests. Mr. Carey performed poorly on the tests and was arrested.

{¶3} According to Deputy Lesnasky, Mr. Carey became very agitated and started screaming obscenities at the deputy. After he was placed inside of the police cruiser, Mr. Carey began banging his head into the glass divider to the point of cutting his own forehead. Mr. Carey was transferred to an ambulance and began screaming at the emergency medical technicians ("EMT's"). Mr. Carey also kicked one of the EMT's, but the EMT declined to file any assault charges. While traveling to the hospital, Mr. Carey told the EMT's that he was going to kill Deputy Lesnasky. At the hospital, Mr. Carey continued screaming and yelling and was out of control to the point where doctors and nurses could not stitch his wound. Mr. Carey took off his shoes and threw them at Deputy Lesnasky. While attempting to transfer Mr. Carey back to a police cruiser by wheelchair, he continued fighting, struggling, and screaming obscenities while attempting to stop the wheelchair from moving forward. As the deputies tried to transfer him from the wheelchair to the cruiser, he spit blood and mucus onto one of the deputies.

{¶4} Mr. Carey filed a motion to suppress, which was denied by the trial court after a hearing. He then pled no contest to harassment with bodily substance, resisting arrest, two counts of operating under the influence of alcohol or drugs ("OVI"), and obstructing official business. The trial court found him guilty of those offenses and merged the OVI's for purposes of sentencing. The court sentenced him to 24 months of community control and ordered him to pay a $375.00 fine.

{¶5} Mr. Carey now appeals from his convictions and raises two assignments of error for this Court's review.

{¶6} For ease of analysis, we will consolidate Mr. Carey's assignments of error.

II.

## ASSIGNMENT OF ERROR ONE

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY DENYING APPELLANT'S MOTION TO SUPPRESS BASED UPON AN IMPROER (SIC) TRAFFIC STOP AND THEREBY VIOLATING APPELLANT'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION AGAINST UNREASONABLE SEARCHES AND SEIZURES * * *.

## ASSIGNMENT OF ERROR TWO

THE TRIAL COURT ERRED AS A MATTER OF LAW BECAUSE THE STATE FAILED TO ESTABLISH ON THE RECORD SUFFICIENT EVIDENCE TO SUPPORT THE TRAFFIC STOP OF APPELLANT IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶7} In his assignments of error, Mr. Carey argues that the trial court erred in denying his motion to suppress because the crack in his windshield was insufficient to provide the deputy with reasonable suspicion to justify a traffic stop of the vehicle. We disagree.

{¶8} A motion to suppress presents a mixed question of law and fact:

When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

*State v. Oberholtz*, 9th Dist. Summit No. 27972, 2016-Ohio-8506, ¶ 5, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶9} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

violated * * *." Article I, Section 14, of the Ohio Constitution contains nearly identical language. "For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant, unless an exception to the warrant requirement applies." *State v. Hetrick*, 9th Dist. Lorain No. 07CA009231, 2008-Ohio-1455, ¶ 19, citing *Katz v. United States*, 389 U.S. 347, 357 (1967). "'One well-delineated exception to the warrant requirement occurs where police officers perform an investigatory stop based on their reasonable suspicion that criminal activity is afoot.'" *State v. Hale*, 9th Dist. Summit No. 28334, 2017-Ohio-7048, ¶ 9, quoting *State v. Jackson*, 9th Dist. Lorain No. 14CA010555, 2015-Ohio-2473, ¶ 13, citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

{¶10} The traffic stop of a vehicle constitutes a seizure for purposes of the Fourth Amendment. *State v. Phillips*, 9th Dist. Medina No. 16CA0018-M, 2017-Ohio-1312, ¶ 6. "'[W]here an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid regardless of the officer's underlying subjective intent or motivation for stopping the vehicle in question.'" *State v. Jackson*, 9th Dist. Summit No. 28625, 2018-Ohio-19, ¶ 16, quoting *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12 (1996). Reasonable suspicion is something less than probable cause and is determined by considering and evaluating the totality of the circumstances. *See Phillips* at ¶ 6-7. An analysis of whether reasonable suspicion existed requires this Court to look at "the facts available to the officer at the moment of the seizure or the search" and consider whether those facts would "warrant a man of reasonable caution in the belief that the action taken was appropriate." *State v. Smiley*, 9th Dist. Summit No. 23815, 2008-Ohio-1915, ¶ 19, quoting *State v. Bobo*, 37 Ohio St.3d 177, 178-179 (1988), quoting *Terry* at 21-22.

{¶11} At the suppression hearing, Deputy Lesnasky testified that, on December 12, 2015, he went to GetGo for coffee and saw Mr. Carey's truck parked at one of the gas pumps. The deputy testified that he noticed the windshield on Mr. Carey's truck had a long crack in it. He testified: "I think [the crack] went from the top all the way to the bottom, but I'm not 100 percent sure on that. That's the best I can recall. It was a big crack. I could see it from - - I was probably 50, 60 feet away, maybe even more." The deputy then drove by the front of Mr. Carey's truck and "took a little better look at it." When asked on cross-examination as to the location of the crack, Deputy Lesnasky testified, "I think it was approximately in the center of the vehicle" near the rearview mirror, but he admitted, "I'm not - - like I said, I can't really truly recall." When he was shown several photographs of the truck and was asked to indicate where the crack was located, Deputy Lesnasky testified, "It's over here by the passenger side, more toward the passenger side (indicating)."

{¶12} Upon review of the photographs entered into evidence by Mr. Carey, this Court cannot definitively discern the size or location of the crack in the windshield in any of the five photographs. The photographs are somewhat blurry to varying degrees and only one of them is a relatively close-up view of the windshield. Mr. Carey testified that the photographs were taken by himself and his father a week or so before the suppression hearing. It is undisputed that the traffic stop occurred on December 12, 2015, while the suppression hearing was held several months later on March 8, 2016. Mr. Carey testified that he has not replaced or done anything to his windshield since the traffic stop.

{¶13} Deputy Lesnasky testified that he elected to follow Mr. Carey while deciding whether to stop him for the cracked windshield. When Mr. Carey exited the GetGo lot, Deputy Lesnasky followed him for about a mile and ran the truck's license plate number. He testified

that Mr. Carey was "swerving back and forth a little bit" and drove over both the fog line and the median line. The deputy then initiated a traffic stop of the vehicle. Mr. Carey testified at the hearing that Deputy Lesnasky said he was stopped because of the cracked windshield, but he claimed the deputy did not mention anything about any trouble staying within the marked lanes on the road.

{¶14} As to the crack in Mr. Carey's windshield, the trial court made the following findings of fact:

> [T]his is long (sic) crack running vertically down the entire windshield, top to bottom near the center of the window. While the crack may not cause significant obscuring of vision, it does present as a threatening hazard due to the potential for shattering in a head on collision as the securing of the window at top and bottom appeared to be compromised.

In denying Mr. Carey's motion to suppress, the trial court found as follows: "Based upon the totality of the circumstances, the court finds there was probable cause for the stop based upon the cracked windshield as a hazard to both the driver and any passengers who might ride in the front seat." The trial court further "[found] credible Deputy Lesnasky's testimony of [Mr. Carey] crossing the fog and middle lanes which supplied additional probable cause of the stop."

{¶15} Pursuant to R.C. 4513.02(A), "[n]o person shall drive * * * on any highway any vehicle * * * which is in such unsafe condition as to endanger any person." Ohio Adm.Code 4501:2-1-11 also states: "Every motor vehicle shall be equipped with safety glass * * * [which] shall be free of discoloration or diffusion, cracks and unauthorized obstructions * * *."

{¶16} Many Ohio courts have concluded that a cracked windshield provides reasonable suspicion to justify a traffic stop if the crack renders the vehicle "unsafe," pursuant to R.C. 4513.02(A). *See State v. Latham*, 2d Dist. Montgomery No. 20302, 2004-Ohio-2314, at ¶ 19 ("the simple appearance of a crack in a windshield does not give rise to a reasonable suspicion of

a violation of R.C. 4513.02(A), * * * but the particular facts surrounding the crack in the windshield [must give] rise to a reasonable suspicion that [the vehicle] was in an unsafe condition such that its operation would endanger persons"). *See also In re M.M.*, 1st Dist. Hamilton Nos. C-140628, C-140629, C-140630, & C-140631, 2015-Ohio-3485, ¶ 9 ("A cracked windshield can result in a violation of R.C. 4513.02(A)—and thus serve as justification for stopping a car—only if it renders the car []in such an unsafe condition as to endanger any person[]"); *State v. Imboden*, 4th Dist. Ross No. 92CA1901, 1993 Ohio App. LEXIS 5579, *6 (Nov. 16, 1993) (concluding that reasonable suspicion does not exist in the absence of any evidence that the officer believed the cracked windshield affected the safeness of the vehicle); *State v. McWhorter*, 8th Dist. Cuyahoga No. 95108, 2011-Ohio-1074, ¶ 17 (affirming the trial court's finding that the officer's description of the alleged crack did not describe an unsafe condition that would justify stopping the vehicle.). "Some courts have stated that the combination of [R.C. 4513.02(A) and Ohio Adm.Code 4501:2-1-11] make it a violation to operate a vehicle with *any* cracks in the windshield because administrative agencies' rules have the full force and effect of law when issued pursuant to statutory authority." (Emphasis added.) *Latham* at ¶ 14, citing *State v. Repp*, 5th Dist. Knox No. 01-CA-11, 2001 Ohio App. LEXIS 6026, *6-7 (Dec. 28, 2001) (noting that the promulgation of Ohio Adm.Code 4501:2-1-11 is expressly authorized by R.C. 4513.02 and carries the full force and effect of law, requiring windshield safety glass to be "free from, among other things, cracks"). The *Repp* Court did note, however, that the evidence presented in that particular case demonstrated the size and placement of a crack which extended into the driver's viewing area and was sufficient to create reasonable suspicion that R.C. 4513.02 was being violated. *See Latham* at ¶ 14, citing *Repp* at *7. Generally, courts have also found a windshield crack to establish reasonable suspicion that R.C.

4513.02(A) has been violated when the crack is substantial or impairs the driver's vision. *See State v. Heiney*, 11th Dist. Portage No. 2000-P-0081, 2001 Ohio App. LEXIS 4434, *4-5 (stating a substantial spider crack on the windshield is sufficient to create a reasonable suspicion that R.C. 4513.02 is being violated); *State v. Thames*, 2d Dist. Montgomery No. 26052, 2015-Ohio-626, ¶ 6 (stating a large, vertical windshield crack that obstructs the driver's view justifies a traffic stop).

{¶17} Recently in *State v. Barber*, where a police detective followed a vehicle and observed several large cracks in its windshield, this Court rejected an argument that the trial court erred in finding the cracks created an unsafe condition. *State v. Barber*, 9th Dist. Summit No. 28507, 2017-Ohio-8010, ¶ 8-12. The detective in *Barber* testified at the suppression hearing and described the cracks in detail, "estimating that there were in excess of five or six and that they 'ran all the way across the windshield.'" *Id.* at ¶ 10. The detective also agreed at the hearing that "the cracks posed a safety hazard because they traversed the driver's line of sight." *Id.* Mr. Barber testified at the hearing as well, but denied the existence of any cracks. *Id.* at ¶ 11. He introduced several pictures into evidence, none of which clearly showed multiple cracks, but the pictures had been taken the day before the suppression hearing and four months after the traffic stop. *Id.* The trial court in *Barber* concluded that the detective had a reasonable suspicion to believe the vehicle was being operated in an unsafe manner and thus properly conducted a traffic stop. *Id.* at ¶ 8. This Court found that there was competent, credible evidence in the record to support the trial court's determination that "the size, location, and number of cracks 'obstructed the driver's view and could [have] compromise[d] the windshield glass.'" *Id.* at ¶ 12.

{¶18} Here, as in *Barber*, the photographs entered into evidence were taken by Mr. Carey and do not clearly show a crack in the windshield. The photographs were taken relatively

close to the suppression hearing, which was held several months after the traffic stop. Unlike in *Barber*, Deputy Lesnasky did not specifically testify as to the effect of the crack on the safety of Mr. Carey's vehicle. *Compare State v. Emerick*, 4th Dist. Washington No. 06CA45, 2007-Ohio-4398, ¶ 16 (concluding a trooper had reasonable suspicion to justify a stop of a vehicle with a cracked windshield for being unsafe even though the trooper "failed to describe the location of the crack or give his opinion on whether it rendered the vehicle unsafe or dangerous * * *"). Deputy Lesnasky did, however, describe the crack in Mr. Carey's windshield as being both long and big, further stating that he initially noticed it from at least 50 feet away, but maybe more than 60 feet, before moving in for a closer look. He also testified that he believed the crack went all the way from the top of the windshield down to the bottom. He testified that he thought it was near the center of the windshield, but stated that he could not truly recall. When he was eventually shown pictures of Mr. Carey's truck on cross-examination, the deputy indicated that the crack was by the passenger's side. While the deputy's testimony did not include any talismanic language explicitly stating that the crack in the windshield made the vehicle "unsafe," such exact language is not required. Deputy Lesnasky's testimony was sufficient to demonstrate the existence of a substantial or significant crack in the truck's windshield. The trial court found that the crack presented "a threatening hazard due to the potential for shattering in a head on collision as the securing of the window at top and bottom appeared to be compromised." Based on the evidence presented at the hearing, we conclude that the trial court's findings were based on competent, credible evidence. We further conclude that Deputy Lesnasky had a reasonable suspicion that Mr. Carey's windshield was in violation of R.C. 4513.02(A) and the traffic stop was therefore not an unreasonable seizure.

{¶19} Furthermore, although Deputy Lesnasky testified that he stopped Mr. Carey because of the cracked windshield, he also testified that Mr. Carey was swerving and drove over both the fog line and the median line. "A traffic stop is constitutionally valid when a law-enforcement officer witnesses a motorist drift over the lane markings in violation of R.C. 4511.33, even without further evidence of erratic or unsafe driving." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, at syllabus. Mr. Carey claims that he was never cited for any marked lanes violations and testified at the hearing that Deputy Lesnasky never mentioned any such violations during the traffic stop. However, the deputy was not required to cite Mr. Carey for the cracked windshield or the marked lanes violations, as a police officer's decision not to cite an individual for the underlying traffic offense that prompted a traffic stop does not negate the validity of the stop. *See State v. Alexander*, 8th Dist. Cuyahoga No. 90509, 2009-Ohio-597, ¶ 38, citing *State v. Fry*, 9th Dist. Summit No. 23211, 2007-Ohio-3240, ¶ 13-14. The trial court found Deputy Lesnasky's testimony to be credible and determined that his observations of the truck swerving and driving over both the fog line and the median line presented the deputy with additional probable cause to conduct a traffic stop. We conclude that the trial court's findings here were based on competent, credible evidence. We further conclude that Deputy Lesnasky had probable cause to stop Mr. Carey's vehicle for driving over both the fog line and the median line.

{¶20} Mr. Carey's assignments of error are both overruled.

III.

{¶21} Mr. Carey's first and second assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

SCHAFER, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

DAVID G. LOMBARDI, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.