[Cite as *State v. Hood*, 2025-Ohio-422.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

ORTAVIOUS L. HOOD, JR.,

    DEFENDANT-APPELLANT.

CASE NO. 9-24-08

O P I N I O N

Appeal from Marion County Common Pleas Court
Trial Court No. 2023 CR 0031

Judgment Affirmed

Date of Decision:  February 10, 2025

APPEARANCES:

    *April F. Campbell* for Appellant

    *Allison M. Kesler* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Ortavious L. Hood, Jr. ("Hood"), appeals the February 23, 2024 judgment entry of sentence the Marion County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from a January 15, 2023 traffic stop of a vehicle operated by Hood for a "significantly cracked" windshield by Captain Ken Rittenour ("Captain Rittenour") of the Marion County Sheriff's Office. (July 12, 2023 Tr. at 8). As a result of the traffic stop, Hood was indicted on January 18, 2023 by the Marion County Grand Jury for six Counts: Count One of trafficking in cocaine in violation of R.C. 2925.03(A)(2), (C)(4)(f), a first-degree felony; Count Two of possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(e), a first-degree felony; Count Three of having weapons while under disability in violation of R.C. 2923.13(A)(2), (B), a third-degree felony; Count Four of having weapons while under disability in violation of R.C. 2923.13(A)(3), (B), a third-degree felony; Count Five of improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B), (I), a fourth-degree felony; and Count Six of carrying a concealed weapon in violation of R.C. 2923.12(A)(2), (F)(1), a first-degree misdemeanor. The indictment included firearm specifications under R.C. 2941.141(A) as to Counts One and Two and forfeiture specifications as to all of the counts. Hood appeared for arraignment on January 23, 2023 and pleaded not guilty to the indictment.

{¶3} On June 6, 2023, Hood filed a motion to suppress evidence, arguing that Captain Rittenour did not have reasonable suspicion or probable cause to stop him. Hood further requested that the trial court suppress the laboratory report generated under R.C. 2925.51 because the notary public's commission had expired. Moreover, in that same motion, Hood requested the transcripts of the State's presentation of its case against Hood before the Marion County Grand Jury, alleging that the indictment was deficient because the weight of the cocaine was not determined by lab analysis until after the indictment. The State filed a memorandum in opposition to Hood's motion on June 20, 2023. After a hearing on July 12, 2023, the trial court on July 14, 2023 granted Hood's suppression motion in part, denied it in part, and denied Hood's request to inspect the grand jury transcripts. Consequently, because the trial court determined (based on the State's concession) that the laboratory report generated under R.C. 2925.51 was notarized with an expired notary, the trial court concluded that the State should call the *analyst* to testify at any trial in this case.

{¶4} On January 23-24, 2024, the case proceeded to a jury trial as to Counts One (along with the firearm specification), Two (along with the firearm specification), Five, and Six and to a bench trial as to the remaining counts and specifications. On January 24, 2024, the jury found Hood guilty as to Counts One, Two, Five, and Six, and the firearm specifications as to Counts One and Two. The trial court found Hood guilty of Counts Three and Four and the forfeiture

specifications as to Counts Two, Three, Four, Five, and Six, but not guilty of the forfeiture specifications as to Count One.

{¶5} On February 23, 2024, the trial court sentenced Hood to a minimum term of 10 years in prison to a maximum term of 15 years in prison as to Count Two, 36 months in prison as to Count Four, 12 months in prison as to Count Five, 90 days in jail as to Count Six, and 1 year in prison as to the firearm specification accompanying Count Two. The trial court ordered Hood to serve the prison terms imposed as to Counts Two, Four, Five, and the firearm specification consecutively. Further, the trial court ordered Hood to serve the term imposed as to Count Six concurrently to the consecutive terms imposed as to Counts Two, Four, Five, and the firearm specification for an aggregate sentence of a minimum term of 15 years to a maximum term of 20 years in prison. Moreover, the trial court merged Counts One and Two and Three and Four, respectively, for purposes of sentencing. The trial court also ordered the contraband identified in the forfeiture specifications forfeited.

{¶6} On March 15, 2024, Hood filed his notice of appeal. He raises four assignment of error for our review.

### First Assignment of Error

**The evidence against Hood should have been suppressed because the officers who stopped Hood did not have reasonable suspicion or probable cause to stop him.**

{¶7} In his first assignment of error, Hood argues that the trial court erred by denying his motion to suppress evidence. Specifically, Hood contends that Captain Rittenour did not have probable cause or reasonable suspicion to stop him because the windshield crack was on the passenger's side, which did not render the operation of his vehicle unsafe.

*Standard of Review*

{¶8} A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id. See also State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must independently determine whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist. 1997).

*Analysis*

{¶9} "The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution generally prohibit warrantless searches and seizures, and any evidence that is obtained during an unlawful search or seizure will

be excluded from being used against the defendant." *State v. Tyson*, 2015-Ohio-3530, ¶ 9 (3d Dist.). "Generally, any evidence obtained in violation of the Fourth Amendment, as well as any evidence seized subsequent to such violation, must be suppressed as 'fruit of the poisonous tree.'" *State v. Fielding*, 2014-Ohio-3105, ¶ 15 (10th Dist.), quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). *See also State v. Jenkins*, 2010-Ohio-5943, ¶ 9 (3d Dist.) (The Fourth Amendment does not explicitly provide "that violations of its provisions against unlawful searches and seizures will result in the suppression of evidence obtained as a result of such violation, but the United States Supreme Court has held that the exclusion of evidence is an essential part of the Fourth Amendment.").

{¶10} "'A traffic stop constitutes a seizure and implicates the protections of the Fourth Amendment' but '"is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime."'" *Tyson* at ¶ 10, quoting *State v. Dillehay*, 2013-Ohio-327, ¶ 13 (3d Dist.) and *State v. Aldridge*, 2014-Ohio-4537, ¶ 10 (3d Dist.), quoting *State v. Mays*, 2008-Ohio-4539, ¶ 7. "The Supreme Court of Ohio has defined 'reasonable articulable suspicion' as 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion [upon an individual's freedom of movement].'" *State v. Shaffer*, 2013-Ohio-3581, ¶ 18 (3d Dist.), quoting *State v. Bobo*, 37 Ohio St.3d 177, 178 (1988). "In determining whether reasonable articulable suspicion exists, a reviewing court must

look to the totality of the circumstances." *State v. Steinbrunner*, 2012-Ohio-2358, ¶ 14 (3d Dist.). "A police officer's testimony alone is sufficient to establish reasonable articulable suspicion for a stop." *State v. McClellan*, 2010-Ohio-314, ¶ 38 (3d Dist.).

**{¶11}** "In addition to a reasonable and articulable suspicion of criminal activity, '[p]robable cause is certainly a complete justification for a traffic stop,' but it is not required to justify a traffic stop." *Tyson* at ¶ 11, quoting *Mays* at ¶ 23. "'Probable cause' is a stricter standard than and subsumes 'reasonable and articulable suspicion.'" *Id.*, quoting *Mays* at ¶ 23. Accordingly, "an officer who witnesses a traffic violation possesses probable cause, and a reasonable articulable suspicion, to conduct a traffic stop." *State v. Haas*, 2012-Ohio-2362, ¶ 16 (3d Dist.).

**{¶12}** In this case, the trial court denied Hood's motion to suppress evidence after concluding that Captain Rittenour had "reasonable suspicion" to stop Hood based on damage to the windshield which rendered operation of the vehicle unsafe in violation of R.C. 4513.02. (Doc No. 52). In reaching its conclusion, the trial court determined that the damage to the windshield constituted a violation of R.C. 4513.02 since it was substantial *and* impaired the driver's vision. Specifically, the trial court reasoned that

> [t]he damage is more than a single crack. Rather it has a large impact point in the passenger side of the front windshield about the height of the front seat's headrests, which then extends into a spiral pattern extending over the majority of the passenger half of the windshield and extending from the top to the bottom of the windshield. In total

there are more than twenty cracks extending from the impact point to various edges of the windshield.

(*Id.*).

**{¶13}** Decisively, we conclude that the trial court did not err by denying Hood's motion to suppress evidence because Captain Rittenour had reasonable suspicion to stop Hood based the damage that he observed to Hood's windshield in violation of R.C. 4513.02. Imperatively, there is competent, credible evidence in the record supporting the trial court's determination that the damage to Hood's windshield constituted a violation of R.C. 4513.02.

**{¶14}** R.C. 4513.02, provides in its relevant part, that "[n]o person shall drive . . . on any highway any vehicle . . . which is in such unsafe condition as to endanger any person." R.C. 4513.02(A). "Many Ohio courts have concluded that a cracked windshield provides reasonable suspicion to justify a traffic stop if the crack renders the vehicle 'unsafe,' pursuant to R.C. 4513.02(A)." *State v. Carey*, 2018-Ohio-831, ¶ 16 (9th Dist.) (collecting cases). "'Some courts have stated that the combination of [R.C. 4513.02(A) and Ohio Adm.Code 4501:2-1-11] make it a violation to operate a vehicle with any cracks in the windshield because administrative agencies' rules have the full force and effect of law when issued pursuant to statutory authority.'" *Id.*, quoting *State v. Latham*, 2004-Ohio-2314, ¶ 14 (2d Dist.). "Generally, courts have . . . found a windshield crack to establish reasonable

suspicion that R.C. 4513.02(A) has been violated when the crack is substantial or impairs the driver's vision." *Id.*

**{¶15}** At the suppression hearing, Captain Rittenour testified that, in his "opinion [it] wasn't just a little cracked, it was significantly cracked." (July 12, 2023 Tr. at 8). *Compare Carey* at ¶ 18 (determining that "Deputy Lesnasky's testimony was sufficient to demonstrate the existence of a substantial or significant crack in the truck's windshield"). He testified that the windshield was not in safe working condition because "it would obstruct [Hood's] view of making the right-hand turns." (July 12, 2023 Tr. at 16). State's Exhibits 1 through 4 depict the condition of the windshield as it appeared on the day of the traffic stop. Consequently, there is competent, credible evidence supporting the trial court's determination that Captain Rittenour had reasonable suspicion to stop Hood based on a violation of R.C. 4513.02. Accordingly, the trial court did not err by denying Hood's motion to suppress evidence.

**{¶16}** Hood's first assignment of error is overruled.

**Second Assignment of Error**

**Because the grand jury indicted Hood with trafficking and possession of cocaine without evidence by way of lab report that the substance was cocaine, nor had evidence as to the amount of it, Hood's indictment was defective, and Hood's Ohio and Federal Constitutional rights, as well as the Ohio Rules of Criminal Procedure, were violated.**

{¶17} In his second assignment of error, Hood argues that Counts One and Two of the indictment are defective since "the State did not have evidence by way of a lab report, that the substance suspected to be cocaine, was actually cocaine" or "have evidence of the amount." (Appellant's Brief at 8). Hood asserts that the evidence presented before the grand jury was insufficient to support its probable cause finding that he trafficked and possessed cocaine in an amount exceeding 27 grams but less than 100 grams.

*Standard of Review*

{¶18} Generally, this court reviews "a trial court's decision on a motion to dismiss an indictment for abuse of discretion." *State v. Hudson*, 2022-Ohio-1435, ¶ 19. An abuse of discretion suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

{¶19} However, because Hood did not object or move to dismiss the indictment, he has waived all but plain error on appeal. *Accord State v. Leonard*, 2024-Ohio-2817, ¶ 11 (1st Dist.); *State v. Buford*, 2008-Ohio-5505, ¶ 11 (6th Dist.) (noting that "a plain-error analysis applies to challenges of defective indictments first raised on appeal"). Under "'Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."'" *State v. Harrison*, 2015-Ohio-1419, ¶ 69 (3d Dist.), quoting *State v. Walburg*, 2011-Ohio-4762, ¶ 47 (10th Dist.). "We recognize plain error with the utmost caution, under exceptional circumstances, and only to prevent a manifest

miscarriage of justice." *Id.* "'For plain error to apply, the trial court must have deviated from a legal rule, the error must have been an obvious defect in the proceeding, and the error must have affected a substantial right.'" *Id.*, quoting *State v. Vielma*, 2012-Ohio-875, ¶ 34 (3d Dist.). "'Under the plain error standard, the appellant must demonstrate that the outcome of his trial would clearly have been different but for the trial court's errors.'" (Emphasis added.) *Id.*, quoting *Vielma* at ¶ 34.

*Analysis*

**{¶20}** "Both Section 10, Article I of the Ohio Constitution and the Fifth Amendment to the Unites States Constitution provide that prosecution for capital offenses or felonies shall be instituted by grand jury indictments." *State v. Rodano*, 2017-Ohio-1034, ¶ 22 (8th Dist.). "The grand jury's responsibilities include both 'the determination whether there is probable cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions.'" *Id.*, quoting *United States v. Calandra*, 414 U.S. 338, 343 (1974). "The grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge." *Id.* "'An indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits.'" *Id.*, quoting *Costello v. United States*, 350 U.S. 359, 363 (1956).

-11-

**{¶21}** "It is well-established that the purpose of an indictment is to give the accused adequate notice of the crime charged." *State v. Clements*, 2010-Ohio-4801, ¶ 8 (12th Dist.). "An indictment is sufficient if it contains the elements of the offense charged, fairly informs the defendant of the charge, and enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Id. See also* Crim.R. 7(B).

**{¶22}** In this case, Hood does not allege that the indictment is deficient on its face. Instead, Hood contends that the evidence presented to the grand jury was insufficient for it to find that there was probable cause that he trafficked or possessed cocaine in an amount exceeding 27 grams but less than 100 grams. However, a trial "court's supervisory power to review grand jury proceedings is limited to prevent fundamental unfairness." *Rodano* at ¶ 27, citing *State v. Hill*, 2015-Ohio-2389, ¶ 22 (8th Dist.) (asserting that "a trial court may invoke its supervisory power to review the grand jury proceedings, but only to prevent 'fundamental unfairness'"), quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256-257 (1988). "'An error is "fundamental" when "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice."'" *Id.*, quoting *Hill* at ¶ 22, quoting *Bank of Nova Scotia* at 257.

**{¶23}** "[T]he presentation of improper evidence to the grand jury is not a 'fundamental error.'" *Hill* at ¶ 25. Because "'the validity of an indictment is not

-12-

affected by the character of the evidence considered' . . . an indictment, fair upon its face, and returned by a properly constituted grand jury, conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged therein." *Id.*, quoting *Calandra*, 414 U.S. at 343. Importantly, the United States Supreme Court has determined that "defendants are not constitutionally entitled to a judicial redetermination of the grand jury's finding that probable cause justifies criminal prosecution." *Id.* at ¶ 26, citing *Kaley v. United States*, 571 U.S. 320 (2014), syllabus. *See also State v. Wilks*, 2018-Ohio-1562, ¶ 37 (asserting that "a facially valid indictment is not subject to challenge based on grounds of inadequate or incompetent evidence"). Relevantly,

> "[i]f indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment."

*Hill* at ¶ 26, quoting *Costello*, 350 U.S. at 363.

**{¶24}** Because Hood's argument regarding the grand jury proceedings does not allege a fundamental error, his argument is not subject to judicial review. Consequently, we conclude that there is no reversible error, plain or otherwise, regarding the grand jury proceedings. *See Rodano* at ¶ 28 (concluding that "[t]here is no reversible error, plain or otherwise, regarding the grand jury proceeding" "[a]lthough the grand jury did not consider her second report (issued long after the

-13-

grand jury proceeding) [because] the prosecution's evidence is tested at trial, not in the grand jury proceeding").

{¶25} Hood's second assignment of error is overruled.

### Third Assignment of Error

**The trial court erred in allowing the forensic analyst to give substitute testimony from the Captain who notarized the laboratory report, in violation of Hood's confrontation right. It also therefore reversibly erred in admitting the lab report into evidence because it did not comply with R.C. 2925.51 and was prejudicial hearsay.**

{¶26} In his third assignment of error, Hood argues that the trial court erred by admitting impermissible hearsay evidence and that the admission of that hearsay evidence violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. Specifically, Hood challenges the admission of State's Exhibit 17 based on "out of court statements from the captain who did not testify, to demonstrate that his commission had not expired" even though "the trial court had previously ruled that the notarization was improper, [and] the State did not seek to amend the report." (Appellant's Brief at 10).

*Standard of Review*

{¶27} Generally, the admission or exclusion of evidence lies within the trial court's discretion, and a reviewing court should not reverse absent an abuse of discretion and material prejudice. *State v. Conway*, 2006-Ohio-2815, ¶ 62. As we previously stated, an abuse of discretion implies that the trial court acted

-14-

unreasonably, arbitrarily, or unconscionably. *Adams*, 62 Ohio St.2d at 157-158. "However, we review de novo evidentiary rulings that implicate the Confrontation Clause." *State v. McKelton*, 2016-Ohio-5735, ¶ 97. "De novo review is independent, without deference to the lower court's decision." *State v. Hudson*, 2013-Ohio-647, ¶ 27 (3d Dist.).

*Analysis*

**{¶28}** In this case, Hood contends that the trial court abused its discretion by admitting State's Exhibit 17 based on the testimony of Anthony Tambasco ("Tambasco"), a forensic scientist and the director of the Mansfield Division of Police Forensic Science Laboratory, who analyzed the cocaine in this case. Hood disputes the trial court's reliance on Tambasco's testimony that Captain Chad Brubaker's ("Captain Brubaker") notarization of Tambasco's statement stating his qualifications and the scientific validity of the testing procedures (in State's Exhibit 17) was not expired.

**{¶29}** We will begin by addressing whether the admission of State's Exhibit 17 based on Captain Brubaker's hearsay statement was proper under the rules of evidence. Then, we will consider whether the admission of Captain Brubaker's out-of-court statement violated Hood's Sixth Amendment rights.

*Hearsay*

**{¶30}** Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the

truth of the matter asserted." Evid.R. 801(C). "Hearsay is inadmissible under Evid.R. 802, unless a particular statement fails to meet the two-part definition in Evid.R. 801(C), or fully satisfies the conditions for nonhearsay prior statements under Evid.R. 801(D)(1) or (2), or falls within one of recognized exceptions under Evid.R. 803 or 804." *State v. Richcreek*, 2011-Ohio-4686, ¶ 22 (6th Dist.). "[A] statement is, by definition, not hearsay when it is offered for a purpose other than to prove the truth of the matter asserted." *State v. Armour*, 2022-Ohio-2717, ¶ 38 (3d Dist.).

{¶31} "R.C. 2925.51(A) creates an exception to the hearsay rules." *State v. Hudson*, 2002 WL 472304, *2 (8th Dist. Mar. 28, 2002). Under R.C. 2925.51,

> a laboratory report of a controlled substance performed by a police laboratory "stating that the substance which is the basis of the alleged offense has been weighed and analyzed and stating the findings as to the content, weight, and identity of the substance and that it contains any amount of a controlled substance and the number and description of unit dosages, is prima-facie evidence of the content, identity, and weight or the existence and number of unit dosages of the substance."

*State v. Garrett*, 2004-Ohio-2231, ¶ 19 (5th Dist.), quoting R.C. 2925.51(A). The statute requires that the "report shall be signed and notarized and the signer must state his or her education and attest that scientifically accepted tests were performed with due caution and that the evidence was handled by accepted procedures." *Id.*, citing R.C. 2925.51(A). "The report must be served to the attorney representing the accused prior to any proceeding in which the report may be used." *Hudson* at *2, citing R.C. 2925.51(B). "The only time the report is not considered prima facie

evidence of the contents, identity and weight of the substance tested is when the accused, within seven days of receiving the report, demands the testimony of the person signing the report." *Id.*, citing R.C. 2925.51(C).

{¶32} Contrary to Hood's argument on appeal, State's Exhibit 17 was not admitted in violation of the hearsay rules. Decisively, the trial court correctly admitted the report based on Tambasco's testimony, which established the report's authenticity. *See State v. Schilling*, 65 Ohio App.3d 154, 160 (5th Dist. 1989); *State v. Rodriquez*, 66 Ohio App.3d 5, 16-17 (6th Dist. 1990). Importantly, in its decision on Hood's suppression motion, the trial court instructed the State to call the analyst (not the notary) to testify at trial.

{¶33} Consequently, the validity of Captain Brubaker's notary had no bearing on the admissibility of the report. *See Hudson* at *3. Even so, Tambasco clarified at trial that Captain Brubaker's notary (contrary to the stated expiration) was *not* expired at the time he notarized Tambasco's report.

*Confrontation Clause*

{¶34} Having determined that the trial court properly admitted State's Exhibit 17 under the hearsay rules, we will turn to Hood's argument that it should have been excluded under the Confrontation Clause. The Confrontation Clause to the Sixth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides that "'[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him

. . . .'"" *Crawford v. Washington*, 541 U.S. 36, 42 (2004), quoting the Confrontation

Clause.

> The United States Supreme Court has interpreted [the Sixth Amendment right to confrontation] to mean that admission of an out-of-court statement of a witness who does not appear at trial is prohibited by the Confrontation Clause if the statement is testimonial unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness.

*State v. Maxwell*, 2014-Ohio-1019, ¶ 34.

**{¶35}** Consequently, "[o]nly testimonial hearsay implicates the

Confrontation Clause." *McKelton*, 2016-Ohio-5735, at ¶ 185. "Therefore, even if

a statement falls under a hearsay exception it can be excluded as testimonial because

such statements violate the Confrontation Clause." *State v. Hairston*, 2016-Ohio-

8495, ¶ 27 (10th Dist.). Conversely, nontestimonial statements may be admissible

under a hearsay exception. *Id.* Likewise, "[t]here is also no dispute that the

Confrontation Clause 'does not bar the use of testimonial statements for purposes

other than establishing the truth of the matter asserted.'" *State v. Ricks*, 2013-Ohio-

3712, ¶ 18, quoting *Crawford* at 59, and citing *Williams v. Illinois*, 567 U.S. 50, 57-

58 (2012).

**{¶36}** For the same reasons that we determined that the admission of State's

Exhibit 17 did not violate the hearsay rules, we conclude that Hood's confrontation

rights were not violated by its admission. Critically, the validity of a notary's

commission, while important for the legal efficacy of a document, is not a statement

made by a witness about a past event. Instead, it is a procedural or administrative fact. *See Read v. Toledo Loan Co.*, 68 Ohio St. 280 (1903), paragraph two of the syllabus (holding that "the act of the notary public or other officer taking and certifying the same is a ministerial, and not a judicial, act"). Even so, based on the facts presented by this case, Tambasco testified to the validity of Captain Brubaker's notary commission.

{¶37} More importantly, Hood was afforded the opportunity to confront Tambasco—the analyst and author of the report regarding the results of his analysis, including his education, methodology, and the handling of the evidence. That is, Hood was able to confront Tamabsco about key facts of the State's case regarding the cocaine.

{¶38} For these reasons, Hood's third assignment of error is overruled.

**Fourth Assignment of Error**

**Hood's convictions should be reversed because his counsel was prejudicially ineffective for failing to object to the analyst's testimony under the confrontation clause, hearsay rules, and R.C. 2925.21.**

{¶39} In his fourth assignment of error, Hood argues his trial counsel was ineffective for failing to object to Tambasco's testimony regarding Captain Brubaker's notarization of his lab report.

*Standard of Review*

**{¶40}** A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976), *vacated in part on other grounds*, 438 U.S. 910 (1978).

**{¶41}** "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 2014-Ohio-259, ¶ 48 (3d Dist.), quoting *Bradley* at 142, citing *Strickland* at 691. "'A reasonable probability is a probability sufficient to

undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142 and citing *Strickland* at 694.

*Analysis*

{¶42} On appeal, Hood argues that his trial counsel was ineffective for failing "to object to test testimony of Tambasco, who substitute testified for a captain of the Mansfield police department who improperly notarized his lab report." (Appellant's Brief at 12). However, based on our resolution of Hood's third assignment of error, Hood's argument that his trial counsel was ineffective for failing to object to Tambasco's testimony is without merit.

{¶43} Hood's fourth assignment of error is overruled.

{¶44} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WALDICK, P.J. and MILLER, J., concur.**

**/hls**